JOHN B. HARE *vs.* STEPHEN MCINTIRE.

Knox. Opinion January 4, 1890.

*Quarry. Blasting. Workmen. Fellow-servant. "All persons."*
R. S., c. 17, §§ 23, 24.

The remedy provided by R. S., c. 17, §§ 23 and 24 for the recovery of damages for a personal injury caused by the blasting of rocks, does not apply to workmen in a quarry.

Fellow-servants mutually owe to each other the duty of exercising ordinary care in the performance of their service, and whichever fails in that respect is liable at common law for any personal injury resulting therefrom to his fellow-servant.

ON REPORT.

This was an action to recover damages of the defendant, which the plaintiff claimed he had sustained by reason of a blast fired by the defendant in a granite quarry, of which the plaintiff gave the defendant no notice. The plaintiff was a stone cutter employed in the sheds and the defendant was a ledge man in charge of the blasting.

The case is stated in the opinion.

*J. E. Moore*, for plaintiff.

"Approaching" in the statute is not a word of limitation. It means to include all those not engaged in blasting. *Winslow* v. *Kimball*, 25 Maine, 493, 495. Otherwise, it would defeat the purpose of the statute originally entitled "to prevent accidents and injuries from the blasting of rocks;" and would exclude one standing still.

Flexibility of interpretation: *Holmes* v. *Paris*, 75 Maine, 559, 561; Bacon, Ab. (stat. rules of construction). Title of statute may be looked at. *Eaton* v. *Green*, 22 Pick. 526, 530, 531; *Holbrook* v. *Holbrook*, 1 Pick. 248, 250, 258.

Negligence: Shear. & Redf. Neg. § 13, a, § 54, a; *Taylor* v. *Carew Mfg. Co.*, 140 Mass. 150, 151. Defendant liable without reference to the statute. *Osborne* v. *Morgan*, 130 Mass. 102; Shear. & Redf. Neg. § 112. Plaintiff had a right to rely on supposition that defendant would do his duty, and give notice of the danger. *State* v. *B. & M. R. R. Co.*, 80 Maine, 430, 443.

*C. E. Littlefield*, for defendant.

Title does not constitute part of an act.

*Charles River Bridge* v. *Warren Bridge*, 7 Pick. 345, 455. Burden of proof upon plaintiff to establish defendant's negligence. *Beaulieu* v. *Portland Co.*, 48 Maine, 291; *Stevens* v. *E. & N. A. R. R. Co.*, 66 Id. 74. Negligence : *Parrot* v. *Wells*, 15 Wall. 537, 538; *Parker* v. *Port. Pub. Co.*, 69 Maine, 176; *Topsham* v. *Lisbon*, 65 Id. 455; Moak's Underhill on Torts, p. 271; Abbott's Trial Ev. p. 590, § 22; *Vincent* v. *Stinecour*, 29 Am. Dec. 149 and note. Servant assumes ordinary and apparent risks. *Coolbroth* v. *M. C. R. R.* 77 Maine, 167; *Buzzell* v. *Laconia Mfg. Co.* 48 Id.

121; Wood's Mar. and S., pp. 680, 698. Plaintiff must show he was in the exercise of due care; and that he did not assume the risks of the blasts, with notice, as he claims no notice was given. Thomp. Neg. pp. 1008, 1015, 1017, 1048; Wood's Mar. and S. pp. 678 (note 1), 680, 692, 693, 718, 720, 740, 748, 758; *Huddleston* v. *Lowell Machine Shop*, 106 Mass. 286; *Ince* v. *E. B. F. Co.*, Id. 152; *Ladd* v. *N. B. R. R. Co.*, 119 Id. 412; *Green* v. *Ill. Cen. R. R. Co.*, 4 Am. Rep. 192; *Gibson* v. *Erie R. R. Co.*, 20 Id. 552; *B. & O. R. R. Co.* v. *Stucker*, 34 Id. 295; *Rains* v. *St. Louis R. R. Co.*, 36 Id. 461; *Tuttle* v. *Det. G. H. & M. R. Co.*, 122 U. S. 189; *Atkins* v. *Merrick Thread Co.*, 3 N. E. Rep. 39 and note; *Gaffney* v. *N. Y. & N. E. R. R. Co.*, 4 Id. 33; *Taylor* v. *Carew Mfg. Co.*, 140 Mass. 150; *Russell* v. *Tillotson*, Id. 201; *Joyce* v. *Worcester*, Id. 245; *Hatt* v. *Nay*, 144 Id. 186; *Nason* v. *West*, 78 Maine, 257; *Judkins* v. *M. C. R. R.*, 80 Id. 417.

VIRGIN, J. An action by one workman in a granite quarry against his fellow-workman, to recover damages for a personal injury alleged to have been caused by a rock thrown from a blast discharged by the defendant. The case comes up on a report of the evidence; and if the action is maintainable it is to stand for trial for the assessment of damages.

The action is founded on R. S., c. 17, §§ 23 and 24, the material provisions of which,—including the words in brackets found in the original act of 1852, c. 257—are as follows: (23) "Persons engaged in blasting lime rock or other rocks, shall before each explosion give seasonable notice thereof, so that all persons or teams [that may be] approaching shall have [a reasonable] time to retire to a safe distance from the place of said explosion." (24) "Whoever violates the preceding section * * is liable for all damages caused by an explosion [when seasonable notice thereof was not given]; and if the persons engaged in blasting rocks are unable to pay, or after judgment and execution avoid payment by the poor debtor's oath, the owners of the quarry, in whose employment they were, are liable for the same."

Is this statutory remedy intended to apply to workmen in quarries?

A literal construction of the words, "all persons," would doubt-

less include them. Still when read in connection with the other clauses of the statute, we do not think the legislature so intended. "Persons that may be approaching" seem rather intended to apply to those only who are not engaged in and about the quarry, and who, therefore, being ignorant of their proximity to danger, are seen coming within the danger line, instead of including with them such persons also as are constantly engaged there and have personal knowledge of what is taking place there. That clause apparently limits the remedy to such outsiders as might unsuspectingly be approaching within the possible range of the blast, and the object of the "seasonable notice" to them is "so that they and their teams may have a reasonable time to retire to a safe distance."

Moreover, if the real intention of these provisions, derived from their language alone, left any doubt on this question, it is entirely removed by the further consideration that the other construction would make it in derogation of the common law; and to warrant such a result the intention should be clearly expressed. *Dwelly* v. *Dwelly*, 46 Maine, 377 ; *Carle* v. *Bangor & Pisc. Canal & R. R. Co.*, 43 Maine, 269.

By the universally acknowledged rule of common law, when an employe of age and intelligence enters another's service, he is presumed to understand and therefore, as between himself and his employer and in the absence of any agreement to the contrary, to assume all the ordinary risks incident thereto, and to measurably predicate his wages upon the extent of the perils he is to encounter and assume, among which are those which he knows are more or less likely to occur through the occasional negligence of his co-employe. And as it is utterly impracticable for the employer to absolutely prevent such negligence, and the best thing he can do in that direction is to employ such prudent workmen as are least likely to act negligently, therefore, if he has used proper care in respect of their selection, the employer is not responsible to any one of them for an injury resulting from the negligence of any other. But if the statute in question is intended to include workmen in quarries, then this long established salutary rule of the common law is thereby reversed; for the

statute expressly makes the employers liable for an injury occasioned by the negligence of a fellow-servant if the one who causes it is unable to pay or avoids.    If such a radical change of the law governing the duties and liabilities of employers to their employes had been in the mind of the legislature, we think the lawmakers would have clearly and directly expressed such intention; and even not limited it to workmen in quarries but extended it to other kinds of business involving more or less danger and in which large numbers of employes are engaged.

This view finds apposite illustration in a decision of this court construing a statute defining the liability of railroad companies. Chapter 81 of R. S., of 1841, after providing for the erection of sign-boards and gates and stationing agents at crossings and fixing penalties for non-compliance therewith, continued as follows :    "Every railroad corporation shall be liable for all damages sustained by *any person*, in consequence of any neglect of the provisions of the foregoing section or of any other neglect of any of their agents, or by any mismanagement of their engines, in an action on the case by the person sustaining such damages." R. S., (1841) c. 81, § 21.    In an action by an employe against a railroad company to recover damages for an injury caused by another employe, the court in deciding that the statute did not apply, says :    "Notwithstanding the literal construction of the statute might entitle a servant to recover for injuries occasioned by the fault of a fellow-servant, still such a construction is wholly inadmissible.    Statutes, unless plainly to be otherwise construed, should receive a construction not in derogation of the common law," and after expressing the opinion that the statute was not intended to change the nature of contracts between such corporations and their servants, the court continues :    "If such had been the intention, we think it would have been more plainly or directly expressed.    The words *"any person"* must be limited in their application to such persons as were not servants of the corporation, leaving such servants who are presumed to have arranged their compensation with their eyes open and to have assumed the relation with all *its ordinary dangers and risks* without any remedy against the corporation for such injuries as may

be incident to the service they have engaged to perform." *Carle v. Bangor & Pisc. Canal & R. R. Co., supra.*

Can the action be maintained at common law?

Some of the elementary writers seem inclined to the opinion that one servant is not liable to a fellow-servant for negligence. Whart. Neg. § 245. Wood Mar. & S., § 325. To maintain his action the plaintiff must prove some contract or obligation, from which in legal contemplation, arises a duty the breach whereof is alleged against the defendant; or facts establishing such a relation between himself and the defendant that such a duty will thence result,—together with a breach thereof. Broom Com. 670.

There is no subsisting contract between fellow-servants and neither receives any compensation from the other. Neither is a party to, or has any interest or privity in the other's contract with their common master. Their separate, independent contracts with him are only material as showing that they are individually rightfully on the premises and engaged in the performance of their service there. The action cannot, therefore, be founded on any contract, but if at all on the defendant's misfeasance, which, even if it could be deemed a breach of his contract with his master, would not for that reason, exempt him from liability to others injured thereby, provided such misfeasance was a violation of a duty springing from the relation between them. And we are of opinion that where two or more persons are engaged in the same general business of a common employer, in which their mutual safety depends somewhat upon the care exercised by them respectively, each owes to the other a duty resulting from their relation of fellow-servants, to exercise such care in the prosecution of their work as men of ordinary prudence usually use in like circumstances; and he who fails in that respect is responsible for a resulting personal injury to his fellow-servant. Such a liability would necessarily have a salutary influence in inducing care on their part.

The great weight of authority lies in this direction. Thus where the plaintiff sued a railroad company to recover damages for the death of her husband—one of its employes—killed by the negligence of one of the defendants' engine drivers—Barons Pollock and Huddleston, while they exempted the company be-

cause the death was caused by a fellow-servant, said : "It is clear that an action would well lie against the driver of the engine, by whose negligent act the death was occasioned." *Swainson* v. *North E. Ry. Co.*, 3 Exch. D. 341, 343. A like *dictum* was made by Baron Alderson in *Wigget* v. *Fox*, 11 Exch. 832, 839, and by Baron Bramwell in *Degg* v. *Midland Ry. Co.*, 1 H. & N. 773, 780. And it has been directly adjudicated in *Wright* v. *Roxburgh*, 2 Ct. Sess. Cas. (3d series) 748; *Hinds* v. *Harbou*, 58 Ind. 121 ; *Hinds* v. *Overacher*, 66 Ind. 547 ; *Griffiths* v. *Wolfram*, 22 Minn. 185 ; and in *Osborne* v. *Morgan*, 130 Mass, 102, which last case expressly overrules *Albro* v. *Jaquith*, 4 Gray, 99. The contrary doctrine "is not only destitute of sense," says the eminent author of "Thompson on Negligence," "but it involves the monstrous conclusion that one servant owes no duty of exercising care to avoid injury to his fellow-servant." 2 Thomp. Neg. 1062. See also Add. Torts, § 245; Shearm. & Redf. Neg. § 144.

Facts. In September, 1882, the defendant, a quarry man of twelve years' experience, was engaged in opening a new place in the quarry, by blasting off the outside layer of soft stone so as to uncover those fit for use which lay beneath in sheets about two feet thick. He sunk his first hole fifteen inches deep in the front edge of the top layer and charged it with "a little more than half a pound of powder." Next north was a table rock six or seven feet high. South, southeast and southwest of this place of blasting were two tiers of long, narrow sheds extending easterly and westerly, seven or eight feet high, divided into bands, where quarried rocks were shaped and dressed. These sheds had narrow doors in each end for ingress and egress, with two sets of doors on their north and south sides, the lower ones two and one-half feet wide and so constructed as to be taken out and the upper ones three and one-half feet wide, hung at their upper edges by hinges and were opened by being swung upward.

The plaintiff was a quarryman and stone cutter. He had cut stone there in May and June, and after working July and August in the crew of one who then had charge of blasting, he returned to cutting again in September when he was engaged in the ex-

treme west end of shed No. 3, two hundred and sixty-five feet south of the place of blasting. The north side doors,—toward the blast,—were closed to keep out the north wind, while the upper south door was open and the lower one closed. When the blast exploded, a piece of rock weighing about ten pounds, came through the north wall of the shed above the closed upper door and hit the plaintiff's back while in a stooping attitude and thence out of the south open door to an iron rail where it broke.

The injury caused by this rock is the foundation of the action; and the particular complaint is that no notice was given to the plaintiff previous to the firing of the blast.

A careful examination of the mass of evidence reported satisfies us, that the general notice usually given when a small blast is to take place, was seasonably given, to wit,—a cry of "fire" three times made with short intervals of time between them, before applying the fire, and that the explosion did not take place for several minutes thereafter. It also appears that when heavy blasts,—which seldom occur,—with twenty-five to fifty pounds of powder are made, the custom is to send word to the several sheds. Frequently when light blasts are fired many workmen, on hearing the alarm go into the sheds for protection, and those already in remain, and hence has grown up a sort of a careless feeling of security on their part.

The plaintiff and some others in the same shed testify that they heard no alarm, accounted for, perhaps, by reason of the din of their hammers and the fact that the doors on the side next to the blast were closed. Still others in the same direction, and much further away distinctly heard it.

But we think the plaintiff mistook his form of remedy; and that the real fault of the defendant was not in failing to give sufficient notice, but in not sufficiently covering the blast. It is absurd to say that rocks from a blast properly covered will fly as did those which rained down upon shed 3, one of which went through its board wall. The gross carelessness of such omission appears upon its face,—*res ipsa loquitur*. But there is no such claim in the declaration and evidence thereof was therefore excluded. Neither is there any allegation in terms of negligence

on the part of the defendant or due care on the part of the plaintiff. We are of opinion, therefore, that this action is not maintainable.

*Plaintiff nonsuit.*

PETERS, C. J., WALTON, EMERY, FOSTER and HASKELL, JJ., concurred.