· ELLIS v. SOUTHERN RY. CO.

1. MASTER AND SERVANT—NEGLIGENCE—NON-FEASANCE—MISFEASANCE.—
   A servant is personally liable to third persons when his wrongful act is the direct and proximate cause of an injury, whether such wrongful act be one of non-feasance or misfeasance.
2. IBID.—IBID.—A servant of a railroad company in charge of the operation and management of its trains is not liable for an injury inflicted by servants employed by him for the company to operate its trains.

Before KLUGH, J., Hampton, October, 1904.    Reversed.

Action by L. D. Ellis, administratrix of W. J. Ellis, against Southern Railway Co., on following complaint:

"The complaint of the above named plaintiff, L. D. Ellis, as administratrix of estate of W. J. Ellis, and in her own behalf and in behalf of the children of the said W. J. Ellis, deceased, respectfully shows to this Court:

"I. That at the times hereinafter mentioned, the defendant, Southern Railway Company, was and is now a railway corporation, duly chartered and existing under and by the laws of the State of South Carolina, and as such is and was operating a railway from the town of Batesburg, in the county of Lexington, and through the counties of Aiken, Barnwell and Hampton, to the station of Hardeeville, in Hampton County, and elsewhere in this State, and as said railway corporation so operating was engaged in the hauling of freight and passengers for hire to and from said points and elsewhere in this State, and the defendant, P. I. Welles, was at the time hereinafter mentioned the agent and servant of the said codefendant, and as such was in exclusive charge

30—72

of the operation and management of the said Southern Railway Company, and still is operating the said railway in behalf of his codefendant, the Southern Railway Company, and as such agent so operating the said railway, was and still is liable for acts and doings of the railway company aforesaid.

"II. That on or about the 3d day of March, 1902, at about 4 o'clock of the morning of that day, W. J. Ellis went to a station on the railway of defendant, the Southern Railway Company, known as Furman, in Hampton County, S. C., where the said railway crosses one of the public highways of said county of Hampton, for the purpose of getting on one of the passenger cars owned and operated by the defendant, the Southern Railway Company, on its said railway, and becoming a passenger thereon, intending to go to his place of business at Summerfield, Fla.; and that soon after getting to said station the regular train of cars, then due to arrive at said station on defendant's railway, appeared in sight with an exceedingly dim headlight on the locomotive attached to said passenger cars of said defendant's company; whereupon and immediately afterwards the said W. J. Ellis lighted with fire some combustible material, and gave across the railway track aforesaid the usual and customary signal for the train of cars aforesaid to stop; whereupon the agent and servants of defendant's railway company aforesaid in charge of said passenger cars and locomotive on the railway track of defendant's company aforesaid, gave with the whistle on the locomotive attached to the passenger cars aforesaid the usual and customary signal to stop; but instead of stopping the said passenger cars aforesaid, as they were in duty bound to do, the agents, servants and employees of the defendant's company aforesaid, wilfully, maliciously, negligently, carelessly and wantonly ran, or caused the passenger cars and locomotive aforesaid to run, by the station aforesaid across the public highway aforesaid at an exceedingly high rate of speed, without first continuously for five hundred yards before reaching the public highway and station aforesaid

ringing the bell or sounding the whistle on the locomotive and train of cars aforesaid on the railway track aforesaid, and wilfully, maliciously, negligently, carelessly and wantonly struck or caused to be struck the person of W. J. Ellis with some parts of the locomotive and train of cars aforesaid on the railway track of defendant's company aforesaid, wounding and instantly killing the said W. J. Ellis.

"That by reason of these wilful, careless, negligent, malicious and wanton acts of the defendant's company, and the killing of the said W. J. Ellis as aforesaid, this (plaintiff and the heirs at law of the said W. J. Ellis) have been damaged in the sum of $50,000.

"IV. The plaintiff is the duly qualified administratrix of the estate and effects of W. J. Ellis, deceased.

"Wherefore, plaintiff demands judgment in her own behalf and in behalf of the heirs at law of the said W. J. Ellis in the sum of $50,000, with the cost of this action."

Defendant Welles appeals on the following exceptions:

First. To the order permitting amendment:

"1. Because it is respectfully submitted that his Honor, the presiding Judge, J. C. Klugh, erred in permitting the plaintiff to amend her complaint, inasmuch as the said complaint did not state the beneficiaries for whose benefit the action was brought, and, therefore, did not state any cause of action; and his Honor, therefore, was without authority to permit an amendment to said complaint, in order that it might state such a cause of action."

Second. To the order overruling the demurrer of the defendant, P. I. Welles:

"1. Because it is respectfully submitted that his Honor, the presiding Judge, erred in not deciding that inasmuch as it appeared upon the face of the complaint that this appellant was an agent and servant of his codefendant, the Southern Railway Company, and that the wilful, malicious, negligent, careless and wanton conduct alleged to have caused the death of plaintiff's intestate, was not committed in the pre-

sence of this defendant, but through the wilful, malicious, negligent, careless and wanton conduct of the agents and servants of the said railway company, in charge of a passenger train of cars and locomotive engine upon said company's road, at a station at which the said W. J. Ellis desired to take passage, and where it is not alleged that this defendant was present, then this defendant not being the master or employer of the persons in charge of said train, is not responsible for their actions, under the doctrine of *respondeat superior,* and no cause of action is alleged against this defendant.

"2. Because it appears upon the face of said complaint that the conduct of the persons in charge of said train was the cause of the injury to plaintiff's intestate, and it is not alleged that the plaintiff was upon their said train, directing the movements and actions of the persons upon said train, and this defendant is not liable for their conduct, the same not being alleged to have occurred through the misfeasance or positive wrong of this defendant.

"3. Because the only charge against this defendant appearing in said complaint is a charge of negligence or conduct amounting to non-feasance or omission of duty in the course of his employment, and for such non-feasance or omission, this defendant, not being the master or employer of the persons in charge of said train, is not liable for the death of plaintiff's intestate.

"4. That under the laws of this State, an agent is not liable to a third person for damages resulting to him in the non-performance, or neglect of the duty which the agent owes to his principal, and the only charge of negligence, or wilful, wanton or malicious conduct under the allegations of said complaint, if any there are, would make him responsible to his principal, his codefendant, the railway company, and not to the plaintiff.

"5. Because, on the face of said complaint, the only allegations of negligence or misconduct on the part of this defendant, being in general words charging that this defend-

ant was in exclusive charge of the operation and management of the railroad company, his codefendant, and that as such agent, he operated the said railway company, and was liable for its acts and doings, and no specific act of negligence being charged against this defendant except as generally responsible for the negligence of the agents, servants and employees of the defendant company in charge of the passenger train and locomotive which struck plaintiff's intestate, no cause of action is alleged against this defendant, even if, under the laws of South Carolina, an employee may be held responsible for acts of non-feasance causing injury to third persons."

*Messrs. Nathaniel B.* and *Joseph W. Barnwell,* for appellant, cite: *As to liability of agents:* Story on Ag., 9 ed., sec. 308; Mechem on Ag., sec. 569, p. 539; Kink. Com. on Torts, sec. 69; 34 La. An., 1123; 7 Ohio St., 231; 17 N. H., 320; 117 N. Y., 42; 122 Fed. R., 286; 125 Fed., 961; 20 Vt., 129. *As to modification of doctrine:* 104 Ala., 611.

*Messrs. E. F. Warren* and *J. P. K. Bryan,* contra, cite: *Amendment properly allowed:* 15 Rich., 201; 32 S. C., 142; 68 S. C., 554. *Liability of agent for acts of non-feasance and misfeasance:* Story on Ag. C., 12, sec. 308; Jaggard on Torts, 287, 289-91; 37 N. J. L., 46; Mecham's Ag., 572; 16 So. Rep., 620; 130 Mass., 102; 28 L. R. A., 433; 76 Mich., 237; 1 Ency., 2 ed., 1132-3; 124 Fed. R., 983.

October 18, 1905. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is an appeal from an order overruling a demurrer to the complaint, on the ground that it does not state facts sufficient to constitute a cause of action. The complaint, together with the exceptions which state the grounds of demurrer, will be set out in the report of the case.

470                    ELLIS *v*. RAILWAY.

_____
                Opinion of the Court.                [72 S. C.
_____

The first question which will be considered is whether an agent is personally liable to a third person for an act of nonfeasance causing injury. In vol. 1, pages 288 and 289 of Jaggard on Torts, it is said: "The thinness and uncertainty of the distinction between the misfeasance, malfeasance and non-feasance, leave an exceedingly unstable basis on which to rest an important principle of liability. It would, indeed, seem to be a fair criticism on the subsequent reasoning that the courts have, in applying the distinction, engaged in a solemn game of logomachy. Thus in Bell *v.* Josselyn, it was said that failure of defendant to examine the state of the pipes in a house before causing the water to be let on, would be a non-feasance; but if he had not caused water to be let on, that non-feasance would not have injured the plaintiff. If he had examined the pipes, and left them in a proper condition, and then caused the letting on of water, there would have been neither non-feasance nor misfeasance. As the facts were, the non-feasance caused the act done to be a misfeasance. The plaintiff suffered from the act done, which was no less a misfeasance by the reason of its being preceded by a non-feasance." Continuing, on page 289, the author uses this language: "The futility of such reasoning on the word 'non-feasance' appears fully from the lack of definitiveness of the meaning to be given the term. This solemn legal jugglery with words will probably disappear, 'if the nature of the duty incumbent upon the servant be considered.' If the servant owe a duty to third persons, derived from instrumentality likely to do harm or otherwise, and he violates that duty, he is responsible. His responsibility rests on his wrongdoing, not on the positive or negative character of his conduct. A wrongful omission is as actionable as a wrongful commission."

The rule is thus stated in Mecham on Agency, sec. 572: "Some confusion has crept into certain cases from a failure to observe clearly the distinction between non-feasance and misfeasance. As has been seen, the agent is not liable to

strangers for the injuries sustained by them, because he did
not undertake the performance of some duty which he owed
to his principal, and imposed upon him, by his relation, which
is non-feasance. Misfeasance may involve, also, to some
extent, the idea of not doing—as where the agent, while en-
gaged in the performance of his undertaking, does, not do
something which it was his duty to do, under the circum-
stances, does not take that precaution, does not exercise that
care, which a due regard for the rights of others requires.
All this is not doing; but it is not the not doing of that
which is imposed upon him by law as a responsible indi-
vidual in common with all other members of society. It is
the same not doing which constitutes actionable negligence
in any relation."

In *Mayer v. Thompson–Hutchinson Bldg. Co.,* 38 L. R. A.,
(Ala.), 433, 436, the Court states the principle as follows:
"The liability of the principal or master to third persons
does not depend upon any privity between him and such
third persons. It is the privity between the master and
servant that creates the liability of the master for injuries
sustained by third persons on account of misfeasance or non-
feasance of the servant or agent. It is difficult to apply the
same principles which govern in matters of contract between
an agent and third persons, to the torts of an agent which
inflict injury on third persons, whether they be of misfea-
sance, or· non-feasance, or to give a sound reason why a
person, who, acting as principal, would be individually liable
to third persons for an omission of duty, becomes exempt
from liability for the same omission of duty because he was
acting as servant or agent. The tort is none the less a tort
to the third person, whether suffered from one acting as
principal or agent, and his rights ought to be the same
against the one whose neglect of duty has caused the injury."
In a note to this case on pages 433 and 434, after the state-
ment that there are many misleading *dicta* to the effect that
non-feasance of a servant causing injury to third persons
is not generally a ground of action in their favor against the

servant, and that these *dicta* can all be traced to a dictum in a dissenting opinion in *Lane* v. *Cotton,* 12 Mod., 488, 1 Ld. Raym., 646, we find the following language: "These dicta and text-book statements based upon them have had the pernicious effect of confusing the subject, because they do not distinguish between the direct liability of an agent or servant to third persons for breach of his own duty toward them, and an indirect liability to them for breach of duty to his own employer, and fail to recognize or indicate the fact that an agent or servant may owe duties to third persons at the same time he owes service to his employer, and that the common duty to regard the rights of our fellow-men is none the less binding upon a person because he happens to be at the time an agent or servant. An analysis of all the cases on the subject shows that in almost every instance negligence of an agent or servant has been held to make him liable to a third person injured thereby, provided he would have been liable if acting on his own behalf under circumstances otherwise unchanged. The difficulty seems to vanish almost if not entirely when the test of the liability of an agent or servant to a third person on account of his non-feasance or negligence is taken to be his non-performance of a duty toward them. Where such duty and neglect thereof appear, it seems utterly unreasonable to say that the negligent person shall not be liable merely because he was the agent or servant of some other person to whom he might also be liable. To say that liability for failure to perform a duty toward a person who is injured in consequence shall not exist because the guilty person is in the same transaction also guilty of a breach of another and distinct duty to a different person, is to state a proposition condemned by the analogies of the law as well as by reason."

The Court, in *Ellis* v. *McNaughton,* 76 Mich., 237, uses this language: "Misfeasance may involve to some extent the idea of not doing; as where an agent, while engaged in the performance of his undertaking, does not do something which it was his duty to do under the circumstances; as, for

instance, when he does not exercise that care which a due regard for the rights of others would require. This is not doing, but it is the not doing of that which is not imposed upon the agent merely by his relation to his principal; but of that which is imposed upon him by law as a responsible individual, in common with all other members of society. It is the same not doing which constitutes negligence in any relation, and is actionable."

The true rule deducible from the authorities is that the servant is personally liable to third persons when his wrongful act is the direct and proximate cause of the injury, whether such wrongful act be one of non-feasance or misfeasance.

The next question that will be considered is whether the complaint contains allegations sufficient to show that the injury was sustained as the direct and proximate result of a wrongful act on the part of the defendant, Welles. Our construction of the complaint is that it seeks to make the defendant, Welles, respond in damages solely on the ground that he was the agent of the Southern Railway Co., and as such was in exclusive charge of the operation and management of said company at the time of the injury. The persons in charge of the train of cars that caused the injury were not the agents of the defendant, Welles, even if employed by him, but of his principal—the Southern Railway Co. While the Southern Railway Co. may have been responsible for the conduct of the servants in charge of said train of cars, their acts did not render the defendant, Welles, liable for the injury, as they were not his agents.

There are no allegations in the complaint to the effect that the injury was a direct and proximate result of a wrongful act on the part of the defendant, Welles. Therefore, it fails to state a cause of action against him, and the demurrer should have been sustained.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed.

*The* CHIEF JUSTICE *did not participate in this opinion because of illness.*