No. 18,647.

C. E. HISLE, *Appellee,* v. THE KANSAS CITY SOUTHERN RAILWAY COMPANY et al., *Appellants.*

SYLLABUS BY THE COURT.

1. EMPLOYER'S LIABILITY ACT—*Personal Injuries—Negligence of Coemployee—Company Liable.* Where, in an action by an employee against a railroad company for damages for personal injuries, the petition states a cause of action under chapter 239 of the Laws of 1911 (the employer's liability act), and the jury find negligence of another employee causing the injury, it is not necessary to consider whether there was evidence to prove an insufficiency in rules, in the number and competency of employees, equipment or other insufficiencies referred to in the statute. The finding of such negligence will uphold the verdict.

2. SAME—*Instructions Refused—Not Prejudicial.* In the situation stated above the denial of requests for instructions to the effect that there was no evidence to prove any of the insufficiencies referred to is not material.

3. SAME—*Foreman of Laborers—Negligence of Subforeman—Foreman Not Liable.* A foreman of laborers in railway service who employs and discharges the laborers is not answerable for the negligence of a subforeman unless the foreman had some direct control over or participation in the wrong complained of.

Appeal from Crawford district court; ANDREW J. CURRAN, judge. Opinion filed February 7, 1914. Affirmed in part and reversed in part.

*Cyrus Crane, G. J. Mersereau,* both of Kansas City, Mo., and *W. J. Watson,* of Pittsburg, for the appellants.

*John P. Curran,* of Pittsburg, *Andrew H. Skidmore,* and *Stephen L. Walker,* both of Columbus, for the appellee.

The opinion of the court was delivered by

BENSON, J.: This is an action to recover damages for personal injuries.

The plaintiff was a laborer in a gang whose usual service was unloading merchandise, supplies and material, at the storeroom in the yards of the defendant company at Pittsburg. He had been engaged in this general work for about forty days before he was injured. In the last two weeks he had worked around the company's storeroom, unloading oil, shovels, picks, and other articles received there. He had also worked with the same men unloading lumber, including timber for car sills. At the time in question the gang consisted of seven men. One of them, defendant Sorrensen, was a subforeman, called a straw boss. Defendant Loving was the foreman of the store department, and had general charge of the men working with Sorrensen, and also of other laborers. He employed and discharged the men.

On the day in question Loving directed Sorrensen to unload a car loaded with timbers 34 to 40 feet in length, 14 inches wide and 10 inches thick, designed for car sills. Loving was not present when the plaintiff was injured, and had not been for the preceding half hour. Sorrensen directed the men while laboring with them. The floor of the car was four and one-half or five feet above the ground, and about three feet higher than a platform at the side of the track. The car had been loaded to a height of ten feet above the floor. In unloading, two 4 x 4 oak skids nine to twelve feet in length were used, the sills being rolled upon the skids by the use of cant hooks, thence sliding down to the

platform.   After working several hours the load was
removed so far as to leave a clear space upon the floor
on the side next to the platform.    The method then
pursued was to place one end of a skid upon the floor
near each end of the car, and then to place the sill upon
the ends of the skids, the other ends projecting out over
the platform.   The weight of the timber when pushed
off the car would bring the outward ends of the skids
down so that the sill would slide upon them.   In con-
tinuing the work after so reaching the floor a sill forty
feet in length was rolled over to the side of the car to
be unloaded.   Sorrensen and three of the men were
upon the north end of the car, and the plaintiff and two
fellow laborers were on the south end.   Sorrensen
stepped down to the ground, and as the north end of
the sill was lifted up, thrust the end of a skid under it,
and resumed his place on the car.   Ruddick, one of the
men at the south end of the car, then stepped off and
placed, or attempted to place, a skid under the sill
there.   Whether he succeeded or not is not clear; there
is evidence, however, that the skid was not put under
the sill, but the men at the north end pushed it off upon
the skid there.   In sliding down that skid the sill dis-
placed the other skid so that it fell upon the platform,
leaving one end projecting over it toward the track.
The south end of the sill then fell upon this projecting
end of the skid, which caused it to fly up over the car
with great force, and strike the plaintiff, causing a
serious injury.

The railroad company, Loving, and Sorrensen were
sued jointly for negligence in failing to furnish the
plaintiff a safe place, safe appliances, and competent
and sufficient workmen, and in failing to provide
proper rules for the work.   It is charged that there
was negligence in requiring the men to do this danger-
ous work under the direction of Sorrensen, who, it is
alleged, was inexperienced and incompetent; in fur-
nishing insufficient skids; in the failure to provide

hooks or other means of securing the skids from slipping from the car, and in requiring the work to be done by hand when a derrick or crane should have been provided. It is also charged that Sorrensen was negligent in throwing one end off before the plaintiff and his fellow laborers at the other end had placed it upon the skid there.

Special findings were made as follows:

"1. If you find that one of the skids slipped or fell from from the car, state what you find caused it to fall. Ans. North end of sill being pushed off first.

"2. State whether or not the plaintiff knew the kind and character of skids that were being used at the time he was hurt. Ans. Yes.

"6. Was there any risk or danger connected with the using of said skids not known to plaintiff? Ans. Yes.

"7. If you answer question number six in the affirmative, then state what it was. Ans. Working with inexperienced men.

"8. Whose duty was it to employ and discharge the men working with plaintiff at the time in question? Ans. Claud Loving.

"10. If you find a verdict against the defendant Sorrensen state in what way he was careless or negligent? Ans. By not having sill properly placed on skids.

"11. If you find a verdict against defendant Loving state in what way he was careless or negligent. Ans. In not having competent foreman.

"12. State whether or not you find from the evidence that any of the men working with plaintiff, other than Loving or Sorrensen, were guilty of any negligence which caused the injury. Ans. No.

"14. Was defendant Loving present or taking any part in the work at the time the injury occurred? Ans. No."

A demurrer to the petition was overruled. Improper joinder is urged here in support of the demurrer. As the demurrer was not based upon that ground but upon the ground that the petition did not state facts sufficient to constitute a cause of action, there was no

error in overruling it. It is also argued that the petition was defective in uniting charges of negligence of the individual defendants with other charges of negligence on the part of the company. If the petition was defective in this respect the defect was waived, no objection having been presented by demurrer or answer. (Civ. Code, § 95; Laws 1911, ch. 230; *Lyons v. Berlau,* 67 Kan. 426, 429, 73 Pac. 52.)

Error is also assigned upon the order overruling a demurrer to the evidence, and this presents the principal question in the case. It is insisted that the work was simple, involving no particular skill or experience, attended with no extraordinary dangers, and that the plaintiff's injuries were caused by mere mischance for which no one is to blame. On the other hand the plaintiff contends that the subforeman was negligent in causing the north end of the sill to be pushed off without pushing off the south end also, resulting in the fall of the other skid; that the skids were insufficient, being made of rough timber and not provided with hooks or claws to hold them in place; and that the work was done in a haphazard way, without a sufficient number of men and without competent oversight or direction. Brief quotations from the evidence may be useful here. One of the plaintiff's fellow laborers testified:

"We were unloading car sills about forty feet long, eight or ten inches thick. Mr. Sorrensen was in charge of squad. We unloaded on 4 x 4 oak skids. The one at the north end was about a foot and a half longer than the one at the south. Hisle, a Mexican and I were working at the south end. Do not remember who was working at the north end. Mr. Ruddick was there. The north end of this timber we were rolling off came a little ahead of the south end. The north skid was under and we had the other end rolled to the edge or near the edge of the skid. The skid was not clean under that end and the timber went off in some way. The weight of the sill threw the skid off."

Another testified:

"North end skid was longer than the one at south. Hisle worked at south end. I at north. North end was placed on skid first by Mr. Sorrensen. North end was adjusted right on the skid. South end was not hardly up to the point yet. The men meant to roll the timbers so that both ends could go off at the same time. After the piece of lumber left the car and got on the skid I saw one skid reel over, like that, and knock Mr. Hisle down. . . .

"Q. These skids, as I understand, were out here on a level with the timber, stick out straight? A. Yes, sir.

"Q. Then when the timber went out on them they both went down, and both of them went right down to the platform? A. Yes, sir; our skid did.

"Q. Well, the other one did also, did it not? A. I could not say whether it did or not.

"Q. Did you notice whether it did or not? A. No, sir.

"Q. So you don't know whether it was long enough to reach from the car to the platform or not? A. No, sir; I could not say, I know that the end of the skid at the south end was considerably shorter than the one that we had at the north end."

The same witness testified that there were no rules and no signals used in this work.

Mr. Sorrensen testified:

". . . Q. And then when it got to the edge of the car, how were the skids placed under it? A. Two men would take a pair of carriers, one man would take a cant hook and raise the end and the other parties would shove it through under the skid.

"Q. The party that shoved the skid through under the sill, where did he stand? A. On the ground.

"Q. In this particular instance, who put the skid under the north end of the timber? A. I did myself.

"Q. Did you put one end of the skid under before the other end was put under? A. Yes, sir.

"Q. Was that the method in which you were doing the work? A. Yes, sir.

37—91 KAN.

"Q. Now, Mr. Sorrensen, will you state to the jury why that was? A. Because you could not get men enough on a car to lift the whole thing up bodily.

"Q. That is, to lift the entire timber or sill? A. Yes, sir.

"Q. You mean by that, so you could put both skids under at the same time? A. Yes, sir.

"Q. So you lifted one end of the sill and put one skid under and then lifted the other end of the sill and put the other skid under? A. Yes, sir.

"Q. You put the skid under the sill at the north end? A. Yes, sir.

"Q. Who put the skid under the sill at the south end? A. A man by the name of Ruddick.

"Q. After you put the skid under the sill at the north end, what did you then do? A. I got on the car.

"Q. For what purpose? A. To help roll it off.

"Q. Did you know whether or not before the accident happened the sill had been placed on the skid at the south end? A. Well, I could not be positive, but I think it was.

"Q. Did you see what happened, and how this skid happened to fly up? A. No, I did not.

"Q. What did you see in regard to the accident? A. I did not see it. My back was turned to the north, and I was lifting with my back to the north.

"Q. How did you know when to lift? A. When they were all ready to turn we started in to turn it.

"Q. So as to roll it off on the platform? A. Yes, sir."

Mr. Ruddick testified:

"In this instance the north skid was placed first. The timber was raised and I placed the south skid. I was at the east end and raised the sill and I pried the skid and that would hold the skid out straight. Then I was instructed to get out of the way so that I would be clear of the sill when it came down. Then I walked to the east end of the platform and the sill came down and Mr. Hisle was hurt. I did not see it."

The jury found that the south skid slipped and fell because the north end of the sill was pushed off first. This finding is consistent with the testimony, which tended to prove that the south skid was not under the

sill. The fact that the skid was not properly adjusted could easily have been seen by the boss had he looked. Even if the skid was in place it was a question for the jury whether proper care on the part of Sorrensen, who caused the sill to be moved at the north end, did not require him to direct a simultaneous movement at the south end. In either case the jury might well find, as they did, that Sorrensen was negligent, and this will uphold the general verdict against him and against the company.

The allegations of the petition were sufficient to admit evidence and sustain a recovery, not only under the common law and statutes in force before the enactment of chapter 239 of the Laws of 1911, but also under that statute, which provides:

"That every company, corporation, receiver or other person operating any railroad in this state shall be liable in damages to any person suffering injury while he is employed by such carrier operating such railroad . . . resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier; or by reason of any insufficiency of clearance of obstructions, of strength of road bed and tracks or structure, of machinery and equipment, of lights and signals, or rules and regulations and of number of employees to perform the particular duties with safety to themselves and their coemployees, or of any other insufficiency, or by reason of any defect, which defect is due to the negligence of said employer, its officers, agents, servants or other employees in its cars, engines, motors, appliances, machinery, track, road bed, boats, works, wharves, or other equipment." (Sec. 1.)

Without determining whether a recovery could be sustained because of any of the insufficiencies detailed in the statute other than negligence of the company, its agents or employees, it is sufficient to say that there was evidence, as already indicated, of the negligence of Sorrensen. It is not necessary to determine whether he was a vice-principal or a coemployee with the plain-

tiff. The company would be liable for his negligence in either capacity. The defendants, however, allege error in refusing instructions requested by them to the effect that a recovery could not be allowed for failing to furnish safe appliances, machinery, equipment or implements, or for failing to furnish competent and sufficient employees, or for failing to promulgate proper rules and regulations. The refusal of these requests would require careful consideration of the various matters referred to were it not for the fact that the jury found that the injury was caused by the negligence of Sorrensen. That is, they found that the skid slipped and fell because the north end of the timber was pushed off first, and that was done by Sorrensen's direction and with his assistance. The injury to the plaintiff resulted from the fall of the sill on the skid, and the fall was caused by pushing the sill off at the north end without causing a corresponding movement at the south end. In this situation the jury were warranted in the finding of negligence necessarily implied in this special finding and without regard to other matters referred to in the statute and in the defendant's request. The negligence of Sorrensen, resulting in the plaintiff's injury, having been thus found, the other matters or insufficiencies referred to in the requests for instructions and in the statute need not be considered.

Objections were made to the evidence of a witness who, having had considerable experience in similar work, was allowed to testify that the skids used were of insufficient length and should have been made smooth or greased; and that he had observed the use of machinery in doing such work. The specific objection is that opinion evidence was not admissible. If this should be conceded we must still observe the wise admonition of the civil code (§ 581) to disregard all technical errors and irregularities which do not affirmatively appear to affect substantial rights. It will be observed that the skids were fully described, together with the manner

in which they were used, and all the details of the work were related. It was held in *Insurance Office v. Woolenmill Co.*, 72 Kan. 41, 82 Pac. 513:

"It is error to permit a witness to testify to the ultimate fact to be determined by the jury, or to give his opinion in answer to an inquiry embracing the whole merits of the case; but where, upon further examination, he relates in detail the facts and circumstances upon which his opinion or statement is based the error may become immaterial." (Syl. ¶ 1.)

Further citations are unnecessary. Prejudice from the ruling complained of does not affirmatively appear, nor can it be reasonably inferred.

Another question to be considered relates to the liability of the general foreman, Mr. Loving. He was not present when the injury occurred, and took no part in the work then being done except to direct Sorrensen to proceed with his gang and unload the car. The jury found that Loving's negligence consisted in not having a competent foreman while having authority to employ and discharge the men. (Findings 6 and 11.) Thus the liability of Loving is based upon the fact that he had an incompetent subforeman under him whom he had employed. The ultimate question, however, is whether Loving is liable because he employed an incompetent man; for while the petition alleged that Sorrensen was incompetent, and charged Loving as well as the company with knowledge of such incompetency, there is no evidence tending to prove either allegation, except the proof that Sorrensen was negligent in this one instance. There is no evidence that at the time Sorrensen was employed or afterwards (until this injury occurred) Loving had any information, notice or reason to suppose that he was not competent. The rule applicable to Loving in this situation is thus stated in 7 Labatt's Master & Servant, 2d ed., § 2592:

"The cases in which this question has arisen are comparatively few, but the sound rule may be said to

be that the superior servant or middleman is not answerable unless he had some direct control or participation in the wrong complained of, or possibly in event of his being careless in their choice."

(*Ellis v. Railway,* 72 S. Car. 465, 52 S. E. 228, 2 L. R. A., n. s., 378, and case note; see, also, 4 Thompson's Commentaries on the Law of Negligence, § 4908.)

The same principle is referred to in *Hussey v. Michael,* ante, p. 542.

It is concluded that the evidence does not sustain the judgment against Loving, and so far as it affects Claud Loving it will be reversed, but the judgment against the railway company and S. Sorrensen will be affirmed. The cause is remanded for the necessary modification of the judgment in the district court.