## NEWTON v. SOUTHERN GROCERY STORES, Inc., et al.

District Court, E. D. South Carolina.
June 19, 1936.

N. W. Edens, of Bennettsville, S. C., for plaintiff.

Thomas, Lumpkin & Cain, of Columbia, S. C., for defendants.

GLENN, District Judge.

This suit is brought against the defendant Southern Grocery Stores, a corporation chartered under the laws of Delaware, and two resident defendants. The defendant corporation chartered under the laws of Delaware operates a chain of stores situated much more to the South than the legal citizenship, and, so far as the operations are concerned, can truthfully be called "Southern Grocery Stores." The resident defendants, Joye and Johnson, are alleged in the following words to be in charge of the store at Bennettsville for the Southern Grocery Stores corporation: "* * * Defendants R. I. Joye and M. R. Johnson were in charge thereof for the said defendant corporation Southern Grocery Stores, Inc., R. I. Joye, as manager of the grocery store and M. R. Johnson as manager of the market operated in conjunction therewith and as part and parcel of the business of Southern Grocery Stores, Inc., and the said R. I. Joye and M. R. Johnson were the agents of the defendant corporation, Southern Grocery Stores, Inc., in active charge, control and direction thereof."

Removal to the United States District Court for the Eastern District of South Carolina was effected on a petition filed by the Southern Grocery Stores, Inc., alleging the usual grounds of separable controversy and fraudulent joinder. Motion for remand was noticed and argued and affidavits were considered on the hearing of the motion. Able argument was had and the motion has been carefully considered.

The law involved has, of course, been before the courts many times. The leading cases dealing with the question of separable controversy and fraudulent joinder have been cited and discussed, and the difficulty here is, as always, in the application of these well-settled principles to the instant case. Such authorities as Lynes v. Standard Oil Co., 300 F. 812, Sanders v. Atlantic Coast Line R. Co., 33 F.(2d) 1010, in this District Court, Martin v. Railroad Co., 43 F.(2d) 293, Gulf Refining Co. v. Morgan, 61 F.(2d) 80, and other similar cases decided by the Circuit Court of Appeals of the Fourth Circuit, have been cited and discussed. Decisions of the Supreme Court of the United States have also been cited, discussed, and considered in their application to the instant case.

The decisions of the Supreme Court of South Carolina make it perfectly plain that in South Carolina a plaintiff suing a master and servant for injuries which he has sustained as a result of the negligence of the servant, within the scope of his employment, may bring a suit against master

and servant, and join them as joint tortfeasors. It is useless to re-cite and re-discuss the long line of cases, among which we find cases called "leading cases." The accident of our reading causes us to cite the following as typical: Rucker v. Smoke (1892) 37 S.C. 377, 16 S.E. 40, 34 Am.St. Rep. 758; Schumpert v. Southern R. Co. (1903) 65 S.C. 332, 43 S.E. 813, 95 Am. St.Rep. 802; Nunnamaker v. Smith (1913) 96 S.C. 294, 80 S.E. 465; Johnson v. Atlantic C. L. Railroad Co. (1927) 142 S.C. 125, 142, 143, 140 S.E. 443.

The old case of Warax v. Railroad Co. (C.C.) 72 F. 637, has undoubtedly caused some confusion in dealing with cases involving removal where the liability of the master depends entirely upon the doctrine of respondeat superior. The bar, both by reason of confidence in, and affection for, the late Chief Justice Taft, who perhaps as much as any judge who ever sat on the Supreme Court of the United States might be called the judges' judge and the lawyers' judge, has caused the bench and bar alike to follow his decisions; but we take it that Jupiter may nod and that the stated law of the land as announced in Supreme Court decisions has overruled the doctrine of the Warax Case. Certainly the law laid down in the Warax Case is not the law governing a tort action in South Carolina. The Supreme Court has stated that, if the law of the state (whether laid down by statute or dependent upon judicial decision entirely) permits the plaintiff to bring an action in joint tort against master and servant alike, then such action, when coming before a District Judge on a motion to remand, must be considered as controlled by the law of the state. In this situation, the District Judge finds no separable controversy where the injuries complained of are alleged, and can reasonably be understood, to be the result of joint and concurrent negligence operating to produce the injuries. The fact that the negligence alleged against the defendant master may arise entirely out of the negligence of the servants who are also joined as defendants, and the fact that the liability of the master may depend entirely upon the application of respondeat superior, do not prevent the suit from being, under the laws of South Carolina governing the pleadings, a suit for recovery against master and servant alike on the theory of joint tort, and justifying, so far as pleadings are concerned, a recovery against them both in one action. No sep-

arable controversy is present in such a situation. Indeed, this court has so often ruled this way in deciding motions to remand that we would be content with a formal order, except for the very earnest and able argument of counsel for the removing defendant, and for some discussion amongst the bar of this state which was provoked by a recent decision of the Supreme Court of South Carolina. Coincident with the writing of this brief memorandum, we took from the mail an opinion of the Supreme Court of South Carolina recalling the opinion which provoked this discussion. We take it that this new opinion is a strong statement by the Supreme Court of South Carolina that it intends to adhere to what we have always considered to be the well-settled law of this state governing the pleadings in tort cases. The opinion cites in totidem verbis and with commendation an opinion filed by my distinguished colleague in the Western District of South Carolina. All of this has been brought out by the opinion in the case of Cravens v. Lawrence et al., 186 S.E. 269.

With the foregoing general statements we take it that there will be very little dispute. Dispute, however, arises out of the application of these principles to the case here. We think that on its face the complaint alleges sufficiently that the injuries complained of were the result of joint and concurrent negligence on the part of the master and the two servants joined as defendants. As, however, the late Judge Ernest F. Cochran pointed out so clearly in a number of his opinions dealing with removal and remand, a joinder, fair on its face, may be shown to be fraudulent. This court has been faced with the decision of this question and understands that the mere use of plural pronouns does not prevent a District Judge, ruling on allegations of joint tort, from using common sense in deciding whether or not the joinder is in reality bona fide or fraudulent. To do this the court must look at the allegations of the complaint, the allegations of the petition for removal, the affidavits filed on the hearing, and, if the parties present testimony, this too must be considered, in deciding whether or not the joinder of the resident defendant in such a case is a pure sham and fraud, or whether or not there is in the factual situation, as reasonably pictured by the court, any reasonable basis for joining the resident defendants as defendants along with the nonresident master.

Here common sense and experience in trials will come as real aids to the judge faced with a decision of this question. Extreme illustrations of the limits to which plaintiffs' counsel have gone might be cited. The reading of the Wecker Case, 204 U. S. 176, 27 S.Ct. 184, 51 L.Ed. 430, 9 Ann. Cas. 757, will make plain the point we are discussing here. The old illustration of attempting to make the division superintendent of a railroad responsible for the engineer failing to blow the whistle, and to join such division superintendent as a resident defendant in a suit resulting from a crossing accident, is a classic illustration of fraudulent joinder. Any man with sense enough to serve as a bailiff, let alone a judge, can see that such joinder of the superintendent in this case would be so fraudulent as to prevent any further consideration. The mere use of plural pronouns would never cure such a manifest absurdity. Ellis v. Southern Ry. Co., 72 S.C. 465, 52 S.E. 228, 2 L.R.A.(N.S.) 378.

So here we come to the crux of the instant motion, and must rest our decision on the question of whether or not the two resident defendants here, Joye and Johnson, or either one of them, owed, under the allegations of the complaint, reasonably understood and read in the light of the other pleadings presented, any duties to the plaintiff which are alleged to have been violated and resulted, along with the negligence of the master, in the injury of the plaintiff. As was so well stated by one of the great judges of the South Carolina Supreme Court, the servant does not escape liability for his own negligence by reason of the fact that his master (generally more responsive to a judgment) can also be held liable by reason of the doctrine of respondeat superior for the damages sustained by the plaintiff. The Southern Grocery Stores, though chartered in Delaware, has its main southern office in Atlanta, Ga. All it has in Bennettsville is a store, and the two resident defendants here are charged with the operation of this store. Southern Grocery Stores, Inc., is, of course, liable for their conduct, within the scope of their employment, to any one injured by reason of the negligence of these two men alleged to be in charge of the major departments of this store. Are they also liable, personally and individually, for damages sustained by the plaintiff as a result of their negligence while about their master's business? We think so. A man does not escape from his individual duty to treat with proper care the persons with whom he needs must come in contact in order to carry on the business for a master, and for carrying on of which business he, the servant, receives compensation which he deems to be commensurate with the service that he renders. That such is the law both of the state of South Carolina and the general law which would govern the trial of this case if it were tried in the federal courts is the conclusion compelled by the careful consideration of the authorities, both state and federal. Hewlett v. Schadel (C.C.A.) 68 F.(2d) 502, 91 A.L.R. 743.

Since argument on the motion to remand, counsel for the removing defendant, Southern Grocery Stores, Inc., has filed with the court a very able brief. This brief deals somewhat with the old distinction between liability of the servant for misfeasance, as opposed to nonfeasance while in the employ of his master. That such distinction makes no difference in South Carolina is, we think, conclusively shown by reading the case of Ellis v. Southern Ry. Co., 72 S.C. 465, 52 S.E. 228, and note in 2 L.R.A.(N.S.) 378. That the trend of the decisions considers this a distinction without a difference finds support in the following considered case (see Cooley on Torts, vol. 2 [3d Ed.]):

"The liability of the servant for both misfeasance and non-feasance is ably sustained in Lough v. Davis, 30 Wash. 204, 70 P. 491, 94 Am.St.Rep. 848, 59 L.R.A. 802, wherein the court says: 'The reason assigned to sustain this rule is that the responsibility must arise from some express or implied obligation between the particular parties standing in privity of law or contract with each other. If this be true, it is difficult to see what difference there is in the obligation to their principal between the commission of an act by the agents, which they are bound to their principal not to do and the omission of an act which they have obligated themselves to their principal to do. They certainly stand in privity of law or contract with their principal exactly as much in the one instance as in the other, for the obligation to do what ought to be done is no more strongly implied in the ordinary contract of agency than is the obligation not to do what ought not to be done. This reason for the rule not being tenable, and no other reason being obvious, the rule itself ought not to obtain; for jurisprudence does not concern itself with

168

such attenuated refinements. It rests upon broad and comprehensive principles in its attempt to promote rights and redress wrongs. If it takes note of a distinction, such distinction will be a practical one, founded on a difference in principle, and not a distinction without a difference; and there can be no distinction in principle between the acts of a servant who puts in motion an agency which, in its wrongful operation, injures his neighbor, and the acts of a servant who, when he sees such agency in motion, and when it is his duty to control it, negligently refuses to do his duty, and suffers it to operate to the damage of another. There is certainly no difference in moral responsibility; there should be none in legal responsibility. Of course, if the omission of the act of nonfeasance does not involve a non-performance of duty, then the responsibility would not attach. If it does involve a non-performance of duty to such an extent that the agent is liable to the principal for the damages ensuing from his neglect, there is no hardship in compelling him to respond directly to the injured party. Such practice is less circuitous than that which necessitates first the suing of the master by the party injured, and a suit by the master against the servant to recoup the damages.' pp. 208–210 [of 30 Wash., at page 493 of 70 P.] Lough v. Davis [& Co.], 35 Wash. 449, 77 P. 732. And see Hare v. McIntire, 82 Me. 240, 19 A. 453, 17 Am. St.Rep. 476, 8 L.R.A. 450."

South Carolina authorities to the same effect are brought down to date in an opinion by Mr. Justice Cothran, Bell v. Clinton Oil Mill et al., 129 S.C. 242, at page 256, 124 S.E. 7. The brief further suggests that the case here is probably weak on its merits, and stresses the fact that the plaintiff here was an employee of a third party and that he came daily to place the ice in the refrigerator provided by the Southern Grocery Stores; that as a result he was not in exactly the same situation as a customer. We do not think that this can affect our ruling here at all. The regularity of his visits and the work done on each occasion simply brought home more closely to those in charge the fact that he came there and that his duties required them to have a safe place within which to perform such duties. A casual customer needs only a safe floor on which to walk, but the plaintiff here was required to use a stepladder in order to put large blocks of ice in a large refrigerator with an opening several feet above the floor. It is not our province to deal with the case on its merits, but we think that certainly sufficient allegations of negligence are made here to justify this court in saying that the plaintiff has a reasonable basis to expect recovery from the resident defendants, and that therefore their joinder as defendants is not fraudulent in law. As to the exact niceties in the application of the law which will develop on trial, we are not concerned.

In view of the foregoing, we are of the opinion that this case should be remanded to the state court, and it will be so ordered in a formal order of remand to be filed herewith.