CHARLES A. SYLVIA Admr. *vs.* NEWPORT GAS LIGHT CO.

APRIL 30, 1924.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

*(1)   Personal Injury Action.   Negligence.*

In a personal injury action the court did not err in refusing to submit the case to the jury on the question of the negligence of an employe of defendant, where there was no evidence tending to show that such employe was incompetent or negligent in any manner in operating the instrumentality under his control.

*(2)   Negligence.   Res Ipsa Loquitur.*

The doctrine of *res ipsa loquitur* does not apply where the thing which occasioned the injury is unknown.

*(3)   Negligence.   Res Ipsa Loquitur.*

The doctrine of *res ipsa loquitur* does not apply where the thing causing the accident was not under the control of the defendant or its servant.

*(4)   Negligence.   Unsafe Instrumentality.   Fellow Servant.*

In a personal injury action arising out of the dumping of a coal bucket while being hoisted, where there was no testimony tending to show that the bucket was unsafe or improper or that the latch was defective; and the evidence showed that the loaded buckets were not hoisted until a signal was given by a fellow servant of deceased whose duty it was to see that the bucket was properly latched, and that if the bucket was properly latched it could not tip, and no evidence that the latch broke, judgment for defendant was properly directed.

TRESPASS ON THE CASE FOR NEGLIGENCE.   Heard on exceptions of plaintiff and overruled.

SWEENEY, J.   This action is brought to recover damages for the death of the plaintiff's intestate, alleged to have been caused by the negligence of the defendant. At the close of the testimony the trial justice directed a verdict for the defendant because there was no evidence proving that its engineer had been guilty of negligence, or that the buckets provided by it were unsafe or defective.

It is admitted by the parties that a barge loaded with bituminous coal for the defendant lay alongside its wharf; that Sandy Harris had a contract with the defendant to unload the coal; and that the defendant provided three

buckets, into which the coal was shoveled by the men employed by Harris. The buckets were made of steel with no opening in the bottom; were shaped something like a coal hod, and would hold about half a ton of coal. A handle is attached to the bucket in such a manner that it balances when empty, but becomes top-heavy when filled, and when hoisted will dump its load if it is not latched. The latch is a steel bar one end of which is securely pivoted directly beneath the center of the handle. At the other end of the latch is a slot, about three inches deep, which slips over a bolt in the back of the bucket. When the slot in the latch is fully engaged with the bolt, the loaded bucket is held upright when hoisted and cannot tip.

The defendant has a stationary engine on its wharf to hoist the coal buckets from the barge to its runway, and when the work of unloading a barge is in progress it provides an engineer to operate the engine. The testimony shows that when a bucket has been filled with coal, upon signal given by one of the men who filled it, the engineer starts the engine and hoists the bucket about thirty-five feet to a runway where it engages with a carriage and is drawn up an incline to a hopper, where the latch on the bucket is automatically released and the bucket, being top-heavy, tips the coal into the hopper. As the empty bucket starts on its descent it rights itself and is lowered into the hold to be again filled with coal.

The work of unloading the barge commenced September 15, 1915. Mr. Harris employed the plaintiff's intestate and five other men to shovel the coal into the buckets. Two men were assigned to each bucket. The men worked all day, and a large quantity of coal was removed from the barge without any mishap. The work was continued the next morning until about eleven o'clock when a bucket filled with coal was hoisted from the hold of the barge, and when it was on the runway, it overturned and the coal fell upon Da Ponte, who was in the hold, injuring him so seriously that he died within a few hours. Mr. Pine testified that

at the time of the accident he was working with the deceased filling a bucket; Mr. Lopes testified that at the same time he and Mr. Santos, (now deceased) were filling another bucket. The other two men did not testify, and it is inferred that it was the bucket which had been filled by them that was hoisted and tipped its contents upon Da Ponte.

The plaintiff now claims that the court erred in not submitting the case to the jury on the question of the negligence of the engineer. As no testimony was introduced tending to show that the engineer was incompetent or that he was negligent in any manner in operating the engine while hoisting the loaded bucket, this claim is without merit.

Plaintiff also contends that the jury could have found that the defendant was negligent in not furnishing safe and proper appliances, and claims the benefit of the doctrine of *res ipsa loquitur*. This doctrine as stated in *Ellis* v. *Waldron*, 19 R. I. 369, 371, is "when the machine or thing in question is shown to be under the control of the defendant, and the accident is such as in the ordinary course of things does not happen if those who have the control exercise proper care, it affords *prima facie* evidence that the accident happened from want of due care." This rule does not apply where the thing which occasioned the injury is unknown. *Wilbur* v. *R. I. Co.*, 27 R. I. 205; *Conover* v. *Delaware, L. & W. R. Co.*, 106 Atl. (N. J.) 384.

The plaintiff admits that the hoist, when properly handled and in good repair was harmless, and that it was a mechanical impossibility for a bucket constructed as this one was to tip, unless the latch had become dislodged. The cause of the tipping of the bucket was the insufficient fastening of the latch. This was wholly within the control of the deceased and his fellow workmen, who were employed by Harris, and the doctrine of *res ipsa loquitur* does not apply because the thing causing the accident was not under the control of the defendant or its servant.

The testimony shows that when the bucket was lowered into the hold the men would detach the hook on the hoisting

cable, turn the bucket on its side and push' coal into it; then right it and complete filling it with coal, and then attach the hook on the hoisting cable to the handle. Before giving the signal to hoist it was necessary for the men to see that the latch was properly fastened. The latch was a simple contrivance, in plain sight, and the men filling the bucket could easily see whether it was properly fastened or not. Pine who worked on the bucket with the deceased testified he has worked as stevedore since 1903; that he always hooked the hoisting cable on the bucket; that every time he hooked the cable on the bucket he looked at the latch; that a man is supposed to look out for his own bucket and see if it is latched before he sends it up and that this was the first time he ever saw a bucket dump. Mr. Harris testified that he has been engaged in this line of work since 1903; that he examined the latches on the buckets the morning prior to the accident, before he put them into the hold, and found that they latched properly, and that the tipping of the bucket on its way to the hopper was a very unusual occurrence. Mr. Quinn, defendant's superintendent, testified that he examined the buckets and the latches just before the work of unloading the barge began, and found them all right. There is no testimony tending to prove that the buckets were unsafe or improper or that the latches were defective. The testimony shows that the buckets had been used for several years, and that this was the first time that one of them had ever tipped.

The testimony proves that the loaded buckets were not hoisted until a signal was given to the defendant's engineer by the fellow workmen of Da Ponte. It was their duty to see that the bucket was properly latched before giving the signal to hoist. If the bucket was properly latched, it could not tip. There is no testimony that any part of the latch broke. Under the testimony the only inference that can be drawn is that the bucket tipped because it was not properly latched by one of the fellow workmen of the deceased, and for this neglect the defendant cannot be held liable.

The plaintiff has several exceptions to the admission or exclusion of testimony, but as these exceptions were not argued nor briefed they are considered waived.

All of the plaintiff's exceptions are overruled and the case is remitted to the Superior Court in the county of Newport with instructions to enter judgment for the defendant upon the verdict.

*Jeremiah A. Sullivan,* for plaintiff.

*Burdick & MacLeod,* for defendant.