(October Term, 1936)

# STANOLIND OIL & GAS CO., ET AL. v. BUNCE

(No. 1937; December 1, 1936; 62 Pac. (2d) 1297)

2

·For the plaintiffs in error there was a brief by *Hagens & Wehrli* of Casper, and *Donald Campbell,* and oral argument by *G. R. Hagens.*

4

8

For the defendant in error, there was a brief by *E. E. Enterline* and *Madge Enterline* of Casper and *Kellar & Kellar* of Lead, South Dakota, and oral arguments by *Kenneth C. Kellar* and *E. E. Enterline*.

RINER, Justice.

This case arose in consequence of certain personal injuries suffered by Bunce, the defendant in error, due to a gas explosion occurring through the use of a hot water heater in a dormitory owned and maintained by the plaintiff in error, Stanolind Oil and Gas Company, near Midwest in Natrona County, Wyoming. The other plaintiff in error, Andrews, was the superintendent of the gas plant of that corporation at the time the accident occurred, and he had been serving in that capacity for many years before. The parties will be hereinafter usually referred to either as designated in the court below or by their respective names, the corporate defendant's name being briefly indicated as the "company."

Plaintiff, at the conclusion of the trial had in the case, obtained a judgment entered on the verdict of the jury against the defendants in the district court of Converse County, where the cause had been taken on removal from Natrona County. These proceedings in error were instituted to review that judgment.

On account of the injuries thus sustained plaintiff brought his action in the district court of Natrona County, against the two parties named as plaintiffs in error here, claiming damages as a result of their alleged negligence.

Plaintiff's petition stated that the "dormitory, gas lines, and equipment, including said hot water heater, were at all times during the time herein mentioned under the exclusive control and management of the defendants herein." The claimed negligence of the defendants is charged thus: "That at the time hereinafter mentioned, as well as prior thereto, the said defendants negligently and carelessly maintained, equipped and operated said gas lines, equipment and hot water heater, negligently and carelessly permitted said gas lines and hot water heater to be and remain out of repair and to become defective, unsafe and dangerous, and carelessly neglected to odorize the gas contained in and passing through said gas lines, and negligently and carelessly used said gas through said gas lines, equipment, and heater in an odorless condition." It is then averred that by reason of this asserted negligence gas was permitted to leak from the aforesaid gas lines, equipment and heater into the said dormitory and basement in quantities dangerous to life, property and the plaintiff. The defendants denied any negligence on their part and alleged that the accident was caused proximately and solely by plaintiff's negligence in attempting to light the burner of the heater when he knew, or with the exercise of ordinary care and caution, should have known that gas had accumulated in the room, and regardless of warnings received by him not to in any manner tamper with the equipment.

The facts involved are briefly these. Bunce had been in the employ of the defendant company and its predecessor, the Midwest Refining Company, for about ten years preceding the 26th day of July, 1933. He had in various capacities during that period always worked in the company's gas department, which handled only natural gas from the field near by. For the convenience and benefit of its employees the company fur-

nished the dormitory aforesaid, and in order to heat water in a thirty gallon tank for use in the building had had installed a Lion hot water heater in the basement. This was a standard type of heater commonly in use throughout the Salt Creek Oil Field. It was supplied with natural gas as fuel through pipes from the company's gas plant, and the undisputed testimony is that this gas was heavier than air. There is a decided conflict in the testimony as to whether it could be detected simply by the sense of smell. A notice was posted, about eye height, to the left of the heater installation, reading:

"Please do not attempt to regulate or change regulation on the gas, water, thermostats or any other part of this equipment.

"In case of emergency shut off gas both inside and outside of building if thought necessary, then report to any one of the following:—Knowles, Mannon, Black, Farmer.

"In case of adjustments or repairs needed, report to same men."

This was signed by Andrews as superintendent of the Salt Creek Gas Plant.

It appears that the forenoon of the July day mentioned above was hot and there was no wind stirring. About 10:30 that morning, Bunce having been employed on the evening shift and having slept until about ten o'clock in the morning, arose and went to the bathroom in the dormitory, turned on the water, found it cold, and shortly thereafter went down to the basement to see why it was not heated. As to what followed the record of plaintiff's testimony on direct examination reads verbatim:

Q. What did you discover when you got to the basement?
A. I heard a sizzling noise in the hot water heater.
Q. Then what did you do if anything?
A. I opened the door of the heater.

Q. What was the purpose in doing that if you know?

A. To see what caused the sizzling.

Q. Did you discover anything?

A. I noticed that the flame in the burner was out.

Q. Then what did you do?

A. I shut off the gas.

Q. What happened to the sizzling?

A. The noise stopped.

Q. Tell the jury what you shut off, what was there and what that would stop?

A. I shut off a valve on a three eighths pipe gas line.

Q. That is where the gas comes into the heater?

A. Where it comes to the mixer.

Q. Then what did you do?

A. I went upstairs to my room.

Q. Do you know how long you stayed there, if you stayed for any length of time?

A. My memory is hazy on that point, I imagine five to ten minutes.

Q. Then what did you do?

A. I went down in the basement again.

Q. What was the purpose in going down the second time?

A. To light the heater.

Q. Had you at any time prior to that time done the same thing?

A. Yes, sir, several times.

Q. How many times?

A. Oh, quite a few.

Q. Well then when you got back you would light it, would you?

A. Yes, sir.

Q. Tell the jury what you were doing that morning, what you started to do and what happened?

A. When I went down in the basement?

Q. Yes, the second time, your purpose was to light it?

A. Yes.

A. I stooped down and struck a match and intended to turn the gas on, I can't swear I succeeded in turning it on, it was my intention to turn it on, there was a puff of smoke and slight explosion in the heater.

Q. What did you do then?

A. I jumped away from it.

Q. Tell the jury what happened?

A. On reaching an upright position the whole basement burst into blue flame, I threw my hands over by face and held my breath, and stood there until I was satisfied the fire was out."

As a result of the explosion Bunce was severely burned, especially about his hands. Other pertinent facts and testimony in the case will be referred to hereinafter as may be deemed necessary.

It is contended for the defendants that an employer and his employee cannot be sued jointly in one action for negligence where the liability of the employer is based solely upon the doctrine of *respondeat superior.* In support of this proposition we are referred to certain Ohio cases, notably Clark v. Fry, 8 Ohio State 358, because that case was decided before the State of Wyoming adopted its code of civil procedure, which, as the legal profession of this state generally know, was in large measure borrowed from that of Ohio. The Ohio cases certainly are in accord with defendants' views on the point. They accordingly urge that as both codes contain the section reading,

"Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of a question involved therein," (§ 89-514 W. R. S. 1931)

the ruling in Ohio on this point should bind us under a familiar rule of statutory construction.

But an examination of the opinion rendered in Clark v. Fry, supra, in 1858, would appear to show that the

disposition of the point at that time was not directed by a consideration of the statute in question, but through reliance upon the earlier decision of Parsons v. Winchell, 5 Cush. 592, the Ohio court saying that this doctrine in that case ruled "appears to rest upon a reason which is entirely satisfactory." A perusal of the opinion in the cited Massachusetts case makes it quite clear that the reason referred to was that under the technical forms of actions at that time in that jurisdiction, the liability of the employer should under the respondeat superior rule be properly invoked by an action on the case, while the liability of the servant required an action of trespass for its enforcement, and the two might not be united.

So the excellent note in 19 A. L. R. 1058, dealing with this matter, very accurately remarks:

"The conflict over the right to join master and servant as defendants begins where the master does not participate in the negligent or wrongful act of the servant, his liability resting upon the doctrine of respondeat superior, or upon statute. It has been held that the act complained of is, for this reason, not joint, and that the master and servant must be pursued separately. The basis of this distinction is purely technical, and arose from the adoption of the reformed procedure. Under the old forms the remedy against the master who did not command or participate in the wrong, but who, in the event of his servant's negligence, had the fault imputed to him, would be an action in case, while the action against the servant would be in trespass; and these could not be joined."

The cases listed and reviewed in this note justify the conclusion there announced that "most courts permit (the master and servant) to be sued jointly." So declares 39 C. J. 1314. We think the better rule on this point is that which has been adopted by the majority of the courts of this country, and we approve the language of the Supreme Court of Washington in Howe

v. Northern Pacific Railway Co., 30 Wash. 569, 70 Pac. 1100, 60 L. R. A. 949, stating that:

"We are inclined to hold with those cases which permit the rights of all parties to be determined in one action, thereby discountenancing and rendering unnecessary, a multiplicity of suits, rather than to compel the plaintiff to pursue and exhaust his remedy against one actor, and then, if compensation cannot be realized for the damage sustained, to proceed against another. We think this view is more in harmony with the spirit of our Code and modern procedure generally."

There was no error in allowing the action to proceed against the defendants jointly.

It appears from the evidence in the case that one Knowles, an employee of the defendant company, was directly in charge of the equipment located in the basement of the dormitory; that certain employees had the duty of inspecting it and that they reported to a foreman. Andrews testified that his duties as superintendent of the company's gas plant were to supervise the manufacture of casinghead gasoline and all of the industries and facilities pertinent to the operation of it; that he was but indirectly in charge of the basement equipment and the dormitory; that he reported to the field superintendent; that his duties did not permit him to direct repairs to be made on minor installations like the heater in question. The plaintiff testified that the employees, with reference to the operation of the gas plant, made report to a foreman and he would report to Andrews. There seems to be no testimony that Andrews knew that there was anything wrong with the heater or actively directed any operation or installation in connection with it.

7 Labatt's Master & Servant (2d Ed.) 8003, § 2592, says that:

"The liability of both the master and servant for the latter's torts to strangers being well established, the

question sometimes arises whether one servant is liable for the torts of another; whether, for example, a superior servant as well as the master may be held for the wrongs of an inferior hand. The cases in which this question has arisen are comparatively few, but the sound rule may be said to be that the superior servant or middleman is not answerable unless he had some direct control or participation in the wrong complained of, or possibly in the event of his being careless in their choice."

See also Ellis v. Southern R. Co., 72 S. C. 465, 52 S. E. 228; Thurman v. Pittsburg & M. Copper Co., 41 Mont. 141, 108 Pac. 588, 592; Gennaux v. Northwestern Improvement Co., 72 Wash. 268, 130 Pac. 495; Morefield v. Ozark Pipe Line Corporation, 27 Fed. (2d) 890; Zurich General Accident etc. Insurance Co. v. Watson Elevator Co., 253 N. Y. 404, 171 N. E. 688; Hisle v. Kansas City Southern Ry. Co., 91 Kan. 572, 138 Pac. 610; Brown v. Lent, 20 Vt. 529; Stegeman, Admx. v. Humbers, 1 Oh. Cir. Dec. 356; Stone v. Cartwright, 6 T. R. 411.

Under the facts shown at present and these authorities there would seem to be at least considerable doubt as to the liability of the defendant Andrews in this case. However, inasmuch as the question does not seem to have been raised or argued by the parties we do not find it necessary to decide it.

It is also argued on behalf of the defendants that the alleged negligence was not proven and that the contributory negligence of the plaintiff was established as a matter of law. We are inclined to think they are mistaken in these views and that the evidence on the points suggested was conflicting, resulting in questions to be determined by the triers of facts.

The trial court instructed the jury that:

"The Court instructs the jury that contributory negligence is defined as such an act or omission on the part of the plaintiff, amounting to a want of ordinary

care, concurring or cooperating with the negligent act of the defendant, and is the proximate cause or occasion of the injury complained of."

It is stated that the giving of this instruction was prejudicial error, the argument advanced being that thereby the jury were told that by pleading contributory negligence on the part of the plaintiff the defendants "confessed negligence on their own part." Defendants by their answer denied that they were guilty of any negligence and then proceeded to plead the alleged contributory negligence of the plaintiff. Under such circumstances the authorities, as we read them, are that the defense of contributory negligence does not constitute an admission or confession of negligence on the part of the defendants, but is really hypothetical in effect. 45 C. J. 1119.

However, the term "contributory negligence" necessarily presupposes negligence for which the defendant is liable, which would be actionable but for the concurrence of the contributory negligence. The jury were told in the case at bar that the plaintiff had the burden of proof and must establish his case by a fair preponderance of the evidence. The instruction as given is, we think, not necessarily reversible error, but in view of the form of the pleadings of the parties, it would perhaps have been fair to have added to the instruction a statement that the principle announced would not apply to the case unless the jury found by due proof preponderance that the defendants were negligent. The defendants might very well have asked for such an addition to the instruction aforesaid, but seem not to have done so.

It is averred by the plaintiff and denied by the defendants that the doctrine of res ipsa loquitur, which was undertaken to be applied to the facts herein, by the district court, through its instructions to the jury, was properly invoked. That doctrine as stated by the

Supreme Court of the United States in San Juan Light & T. Co. v. Requena, 224 U. S. 89, 32 Sup. Ct. Rep. 399, 56 L. Ed. 680, is that, "when a thing which causes injury, without fault of the injured person, is shown to be under the exclusive control of the defendant, and the injury is such as, in the ordinary course of things, does not occur if the one having such control uses proper care, it affords reasonable evidence, in the absence of an explanation, that the injury arose from the defendant's want of care."

Of similar import are the essentials of the doctrine as well phrased by Dean Wigmore, 5 Wigmore on Evidence (2d Ed.) 498, Sec. 2509, thus:

"(1) The apparatus must be such that in the ordinary instance no injurious operation is to be expected unless from a careless construction, inspection, or user; (2d) Both inspection and user must have been at the time of the injury in the control of the party charged; (3) The injurious occurrence or condition must have happened irrespective of any voluntary action at the time by the party injured."

And the learned author supplements this statement:

"It may be added that the particular force and justice of the presumption, regarded as a rule throwing upon the party charged the duty of producing evidence, consists in the circumstance that the chief evidence of the true cause, whether culpable or innocent, is practically accessible to him but inaccessible to the injured person."

Judge Cooley in his work on Torts, Vol. 3 (4th Ed.) Page 371, § 480, quoting from the Supreme Court of Pennsylvania in Zahniser v. Pennsylvania Torpedo Co., 190 Pa. St. 350, 42 Atl. 707, says:

" 'The accurate statement of the law is not that negligence is presumed but that the circumstances amount to evidence from which it may be inferred by the jury. In cases where the duty is not absolute, like that of the common carrier to exercise the highest care

and skill in regard to the safety of a passenger who has committed himself to its charge, but arises in the ordinary course of business, it is essential that it shall appear that the transaction in which the accident occurred was in the exclusive management of the defendant, and all the elements of the occurrence within his control, and that the result was so far out of the usual course that there is no fair inference that it could have been produced by any other cause than negligence. If there is any other cause apparent to which the injury may with equal fairness be attributed, the inference of negligence cannot be drawn.' "

Cases appropriately illustrating the application of the rule indicated by these authorities will presently be mentioned, but for the moment it is proper to refer to the record before us and to recall certain evidence there appearing.

It will be kept in mind from the verbatim statement of plaintiff's own testimony hereinbefore set out that when he went down to the basement of the dormitory the first time, he stated that he "opened the door of the heater"; observed that the flame was extinguished; that he "shut off the gas" where it comes into the mixer of the heater, thereby stopping the sizzling noise, and then went upstairs to his room; that he returned to the basement five or ten minutes later and attempted to turn the gas on and light it, whereupon the explosion followed, first in the heater and then in the room. In connection with this testimony it is also necessary to review briefly some of that afforded by certain other witnesses in the case.

Mr. Buell, a petroleum engineer and witness called by the defendants, testified on redirect examination, among other things, that the fact that the door of the heater was open would tend to bring the gas down the chimney more than if it were not open, because it would leave a large opening there at the bottom that could very easily let all of the gas that was in the flue come back into the basement. Clyde Walker, a gas in-

spector for the defendant company, stated that he examined the basement right after the explosion, and it did not look to him that there was a very large amount of gas present when it occurred and that most of the explosion took place within six feet of the heater; that if the heater in question had proper ventilation the gas would go up the vent; that when he inspected it, it should and did normally go up the chimney; that it would do that when the door of the heater was closed; that if the door to the heater were opened there would not be any draft and the tendency would be for the gas to come out in the room. On cross-examination, he gave testimony that from where the vent or pipe line from the heater runs into the chimney up to the top outside would be approximately twenty-five feet.

Pease, a repair man of gas lines for the company, testified that in April or May preceding the date of the accident, he adjusted the flame of this heater; that when its door was closed the gas under normal conditions would go up the vent; that if the door were opened with the gas going through there, part of it would come out into the room. M. N. Black, who was one of those immediately charged with the duty of seeing that the equipment in question was working properly, said that he inspected this heater about four o'clock the day before, and found it in good order; that in the case of gas escaping from the burner of a Lion heater that which is not burned goes up through the flue if the door is closed; that if the door is open the gas would have a better chance to escape into the room.

M. N. Stoffell, a graduate mechanical engineer, who since his employment by the company had made a special study of the subject of burning natural gas and was familiar with the Lion heater standard equipment, stated on the witness stand that a minimum mixture of five per cent gas with air is necessary to cause an

explosion, that is, at least five per cent of the total volume. On cross-examination, he further stated that with everything in working order on the heater equipment, with the flame out and the gas continuing to flow, that the gas would go up the chimney; that if the gas were shut off and the door to the heater open the gas would go out in the room to the capacity of the chimney and the vent; that with no wind and the forced draft supply shut off, the gas would tend to come back down the chimney; that with the gravity of the gas heavier than the air, the specific gravity thereof being 1.2, it would come back to the ground and settle, probably concentrated at the burner; that there would be approximately thirty cubic feet of gas in the chimney and vent.

Mr. Irish, a witness for the plaintiff, testified on rebuttal that if everything about the heater, the vent and chimney were in proper condition, and then for some reason the gas went out, whereupon the door to the heater was opened and the gas shut off, the gas would pass on through the flue and out into the atmosphere if there were a draft in the chimney; and he answered this question, "Now, then, by the opening of the door and closing the valve at the same time, could enough gas come out of that door in that instant, where you simply opened the door and shut off the valve, to cause an explosion in five or ten minutes by the lighting of a match?" "No."

Recurring now to pertinent decisions applying the principle of res ipsa loquitur, as stated above, to facts generally analogous to those here presented, in Kilgore v. Shepard Co., 52 R. I. 151, 158 Atl. 720, it appeared that the plaintiff, a woman, while waiting to purchase some merchandise in defendant's store, moved a chair about six inches from the table where the merchandise was placed for sale, and undertook to sit down on it; that as she sat on the chair it gave way and she fell to

the floor and was hurt; that the chair was about two feet high, with a short back and its legs were outside a wooden ring, about ten inches from the floor, fastened to the legs with screws. An examination of the chair immediately after plaintiff's fall showed that the top of the left front leg was out of its socket in the seat, and that the leg was broken about two inches from the floor. The court said:

"Plaintiff contends that her testimony entitled her to the benefit of the doctrine of res ipsa loquitur. The contention cannot be sustained. The doctrine does not apply where the thing occasioning the injury was not under defendant's control. Sylvia v. Newport Gas Light Co., 45 R. I. 515, 124 A. 289. The application of this doctrine is limited by the following considerations: (1) The apparatus or thing must be such that in the ordinary instance no injury would result unless from a careless construction, operation, or user; (2) both inspection and user must have been at the time of the injury in the control of the party charged with neglect; and (3) the injurious occurrence or condition must have happened irrespective of any voluntary action at the time by the party injured. 5 Wigmore on Evidence, § 2509. Schiesel v. Poli Realty Co., 108 Conn. 115, 142 A. 812; Springs v. Doll, 197 N. C. 240, 148 S. E. 251; 45 C. J. 1214.

"Applying these limitations of the doctrine to the testimony, we find that plaintiff is not entitled to the benefit of the doctrine, because it appears that the chair was under her exclusive control and use from the time she moved it from the table. The chair was a portable one, and was voluntarily used by plaintiff without any suggestion on the part of the saleswoman."

In Klenzendorf v. Shasta Union High School District, 4 Cal. App. (2d) 164, 40 Pac. (2d) 878, it was in evidence that a student in the manual training department of the high school was using one of the machines in the shop course, a jointer which resembled a table or bench with an open slot, beneath which rapidly revolved steel blades operated by an electric

motor; these blades rose as a piece of wood was passed over the table and planed off the surface of the wood. In thus passing a piece of wood through the jointer the wood slipped, throwing the student's right hand forward into the blades and badly injuring his fingers. At the time of the injury the jointer was protected by a wooden blade guard, which had prior to the accident been substituted for an iron guard, which was a part of the machine's original equipment as furnished by the manufacturer. Holding the doctrine of res ipsa loquitur inapplicable the court remarked:

"As a further reason for upholding the court for refusing to instruct upon the doctrine of res ipsa loquitur, it is well established that the instrumentality shall be under the exclusive control of the defendants in order that the doctrine of res ipsa loquitur may be invoked.

"We do not believe a school district can be said to have exclusive control of an instrumentality which is part of the equipment in a shop course to be used and is actually used by members of the class. Hilson v. Pacific G. & E. Co., 131 Cal. App. 427, 21 P. (2d) 663; Hill v. Pacific G. & E. Co., 22 Cal. App. 788, 136 P. 492; Olson v. Whitthorne & Swan, 203 Cal. 206, 263 P. 518, 519, 59 A. L. R. 129."

The case of Briganti v. Connecticut Co., 119 Conn. 316, 175 Atl. 679, was an action against a trolley car company for injuries sustained by a passenger when a window glass in the car in which he was sitting fell out of the window sash that had dropped suddenly without any act on the part of any one. The falling glass inflicted wounds on the passenger's hand as it rested on the sill of the window. After quoting the three condtiions mentioned in the excerpt given above from Wigmore on Evidence, and which the court says are "a fair basis for the application of the doctrine of res ipsa loquitur and the drawing of an inference that

the defendant was negligent," it is stated by the court in declining to apply that doctrine:

"In the present case the window was constructed with stops for the purpose of holding it either closed or open at various heights as the passenger might desire. The day was warm, and the car had been on a previous run before the plaintiff entered it. Whether the window was opened by an employee of the defendant or by a passenger on the previous run is not known. It might have been either, with the probability under the circumstances that it was opened by a passenger. It was obviously subject, when the plaintiff arrived, to his control; he was free to close it or not as he preferred, and he chose to leave it open. It does not appear that the defendant exercised any control over the window or over the plaintiff's choice in the matter."

It may be observed in connection with this case that the plaintiff had done nothing with the sash or the glass, which was, as the court observed, merely subject to his control.

Where damages for personal injuries were sought by the plaintiff when a bottle of Coca-Cola bottled by the defendant company and sold to plaintiff's employer exploded, throwing a piece of glass into plaintiff's eye, in Winfree v. Coca-Cola Bottling Works of Lebanon, 19 Tenn. App. 144, 83 S. W. (2d) 903, the court declared that:

"The doctrine of res ipsa loquitur applies only when the instrumentality is wholly within the possession of the defendant and under its control and management at the time of the casualty. Coca-Cola Bottling Co. v. Rowland, 16 Tenn. App. 184, 66 S. W. (2d) 272; Yates v. Coca-Cola Bottling Works, supra (14 Tenn. App. 7, 10); Lewis v. Casenburg, 157 Tenn. 187, 7 S. W. (2d) 808, 60 A. L. R. 254."

And it was held in Matthews v. Chicago & N. W. Ry. Co., 162 Minn. 313, 202 N. W. 896, that the rule of res ipsa loquitur was not applicable in an action to recover damages for the death of an engineer caused

by a locomotive boiler explosion, he being the engineer in charge thereof, under circumstances indicating his negligence as responsible for the accident as much or more than that of the defendant. Referring to a prior decision of the court the opinion says that:

"In that case is emphasized the statement of Dean Wigmore that both inspection and user must have been at the time of the injury in the control of the party to be charged. That, of course, implies the exclusion from control, at least to any extent making possible his contribution to the injury, of the person on whose behalf recovery is sought, a conclusion arising also from the learned author's next statement that 'the injurious occurrence or condition must' have happened irrespective of any voluntary action at the time by the party injured.' If in this case we lay aside the burned crown sheet and all its implications, we still have the fact that Mr. Schaal was, at the time being, in control and responsible for the safe user of the boiler. That alone is an insurmountable obstacle to the application of the res ipsa rule. Legally, it prevents the thing's speaking for itself in proof of negligence."

So in Lynch v. Ninemire Packing Co., 63 Wash. 423, 115 Pac. 838, it was held that the principle of res ipsa loquitur could not be invoked. There the action was for the personal injuries caused by the explosion of a tallow vat in the exclusive charge of the plaintiff, as an employee of the defendant company, which owned and operated the equipment. He observed that the vat was leaking and to stop the trouble tightened the vat's clamp by turning an eyebolt. Shortly thereafter, while he was near by, the vat exploded and he was burned by the flying hot tallow. After the accident it was discovered that the clamp had been broken at the point where the bolt had passed through. Said the court, after quoting Mr. Wigmore's aforesaid three limitations in the application of the doctrine of res ipsa loquitur:

"Applying the second limitation mentioned, it is ap-

parent that at the time of this accident inspection and user were not in control of the respondent. While we have heretofore held that under proper circumstances and conditions the maxim of res ipsa loquitur will be applied to the relation of master and servant in negligence cases, we have not held that the mere existence of that relation calls for its application to all such cases. To do so would in many instances compel us to ignore the elementary principles on which the doctrine is based, and thereby unjustly place the master at the mercy of a servant who might himself be at fault."

Discussing the rule of res ipsa loquitur, in Springs v. Doll, 197 N. C. 240, 148 S. E. 251, the court uses this language:

"The principle of res ipsa loquitur has been frequently stated in various decisions of this court and of other courts, and therefore requires no restatement or elaboration. There are, however, certain well-established exceptions or limitations to the application of the rule. The most important of these exceptions or limitations may be classified as follows:

"(1) The apparatus must be such that in the ordinary instances no injurious operation is to be expected, unless from a careless construction, inspection, or user; (2) both inspection and user must have been, at the time of the injury, in the control of the party charged; (3) the injurious occurrence must have happened irrespective of any voluntary action at the time by the party injured. Stewart v. Carpet Co., 138 N. C. 60, 50 S. E. 562."

In Phillippi v. Farmers' Mutual Telephone Co., 113 W. Va. 470, 168 S. E. 762, it is said concerning the rule of res ipsa loquitur:

"The doctrine does not apply where an 'unexplained accident may have been the result of causes over which defendant had no control.' Laurent v. United Fuel Gas Co., 101 W. Va. 499, 133 S. E. 116."

That was a case where a telephone pole, with wires at-

tached; fell from a bank on the roadside, striking the automobile in which the plaintiff was riding and injuring her.

The Court of Appeals of Maryland in Klan v. Security Motors, Inc., 164 Md. 198, 164 Atl. 235, quoting from a former case has recently said:

" 'If, by the evidence of the plaintiff, it was disclosed that the injury complained of might have been caused either by the defendant's negligence or by the act of another for which the defendant was not responsible, then the doctrine (res ipsa loquitur) would not apply.' This is, almost in terms, the rule applied in Strasburger v. Vogel, 103 Md. 85, 89, 63 A. 202, 203, wherein it is said the effect of the application of the rule in such a case would be 'to draw an inference of negligence from only a part of the attendant circumstances.' "

The proper application of the rule in question was indicated by the Supreme Judicial Court of Massachusetts in Wilson v. Colonial Air Transport, 278 Mass. 420, 180 N. E. 212, in these words:

"The principle of res ipsa loquitur only applies where the direct cause of the accident and so much of the surrounding circumstances as were essential to its occurrence were within the sole control of the defendants or of their servants. Reardon v. Boston Elevated Railway Co., 247 Mass. 124, 141 N. E. 857. It is to be noted that the presumption raised in favor of the plaintiff by the application of the res ipsa loquitur doctrine is one of evidence and not of substance, and that the burden of proof remains during the trial upon the plaintiff. Carroll v. Boston Elevated Railway Co., 200 Mass. 527, 536, 86 N. E. 793; Gilcrist v. Boston Elevated Railway Co., 272 Mass. 346, 351, 352, 172 N. E. 349. It is also to be observed that the doctrine will not be applied if there is any other reasonable or probable cause from which it might be inferred there was no negligence at all; nor does it apply in any instance when the agency causing the accident is not under the sole and exclusive control of the person sought to be charged with the injury. Stangy v. Boston Elevated

Railway Co., 220 Mass. 414, 416, 107 N. E. 933; Reardon v. Boston Elevated Railway Co., 247 Mass. 124, 126, 141 N. E. 857; Di Leo v. Eastern Massachusetts Street Railway, 255 Mass. 140, 143, 150 N. E. 891."

In Olson v. Whitthorne & Swan, 203 Cal. 206, 263 Pac. 518, the res ipsa loquitur principle was held inapplicable where the plaintiff was struck by the rebound of one swinging door of defendant's store while she held the other door open for a lady immediately following her, these doors being of standard construction and equipped with spring checking devices. The court in part said:

"The plaintiff contended in the trial court, and now contends, that the doctrine of res ipsa loquitur should apply to the situation presented on her behalf. We think this is a case to which the doctrine is not applicable. * * * * It does not apply 'where an unexplained accident might have been caused by plaintiff's negligence, or been due to one of several causes, for some of which the defendant is not responsible.' 19 Cal. Jur. 710, 711. Swinging doors in buildings and stores are installed and maintained for the accommodation of those who have occasion to enter such buildings. The operation of such doors is not within the exclusive control of the owner of the building or proprietor of the store. Customers and patrons take a very distinct part in their operation and are chargeable with the exercise of ordinary care in their use. Injury may occur in their operation from a lack of such care on the part of the persons who use them, and for whose negligence the owner or proprietor would be in no wise responsible. In the present case the injury to the plaintiff may have been caused by the negligent operation of the left-hand door shown by the evidence to have been hurriedly used by the third lady when it rebounded and struck the plaintiff (Smith v. Johnson, 219 Mass. 142, 106 N. E. 604, L. R. A. 1915F, 572, Ann. Cas. 1916D, 1234; Pardington v. Abraham, 93 App. Div. 359, 87 N. Y. S. 670, affirmed in 183 N. Y. 553, 76 N. E. 1102), or it may have been caused by the plaintiff's own negligent use of the right-hand door."

The case of Dittert v. Fischer, 148 Or. 366, 36 Pac. (2d) 592, is likewise in line with the decisions hereinbefore reviewed and helpful in a solution of the matter in hand. There a counterclaim for personal injuries suffered as a result of the alleged negligence of the defendant, a nurse engaged in the operation of a private hospital, was sought to be maintained. The plaintiff as a patient in the hospital required in the course of his treatment there hot applications of moist packs to an infected portion of his body. The heat was maintained by an electric heating pad applied over the packs. The nurse told him to keep the packs as hot as he could bear and showed him how to operate the pad, which was controlled by a switch arranged to produce different temperatures. He used the apparatus for several days without ill result, but on a subsequent night was burned when he turned on the current by means of the switch and fell asleep, the burns being discovered the next morning by the attending physician. Deciding that the facts of the case precluded the rule of res ipsa loquitur operating as contended by the plaintiff, the court pointed out that:

"There is no claim made that appellant was not in full possession of all his mental faculties all the time he was in the hospital. Nor is there any claim that he was not entirely capable physically to turn the switch on or off. He testified that he did so manipulate the electric switch many times during the first three days he was in the hospital. The instrumentality (the electric current) which caused his alleged injury was under his control at least to the same extent as it was under control of plaintiff.

"The doctrine of res ipsa loquitur is only available when the instrumentality causing the injury complained of is entirely under the control of the one against whom the charge of negligence is made. Nutt v. Southern Pacific Company, 25 Or. 291, 35 P. 653; Phillipsen v. Hunt, 129 Or. 242, 276 P. 255; Teel v. A. B. Steinbach Estate, 135 Or. 501, 296 P. 1069."

Finally, it will be observed, the Supreme Court of the United States in San Juan Light & T. Co. v. Requena, supra, has pertinently remarked that it recognizes the fact that the doctrine of res ipsa loquitur "is of restricted scope and when misapplied is calculated to operate prejudicially." See also Thompson v. Cooles, (Del. Super.) 180 Atl. 522; Speidel v. Lacer, 2 Cal. App. (2d) 528, 38 Pac. (2d) 477; Schiesel v. S. Z. Poli Realty Co., 108 Conn. 115, 142 Atl. 812; The President Wilson, 5 Fed. Supp. 684; Barbieri v. Law, 209 Cal. 429, 287 Pac. 464; Aita v. John Beno Co. et al., 206 Ia. 1361; 222 N. W. 386, 61 A. L. R. 351; Holmgren v. Red Lake Falls Milling Co., 169 Minn. 268, 210 N. W. 1000.

In the case at bar, the district court told the jury by its instruction No. 17 that:

"You are instructed that there is a rule of law known as res ipsa loquitur which, translated literally, means 'the thing speaks for itself.' This rule defined declares that when the thing which causes injury is shown to be under the management and control of the defendant, and the accident is such as in the ordinary course of things does not happen if those who have the management and control use proper care, it affords evidence, that the accident arose from the want of ordinary care, unless you are satisfied from the evidence that the defendant has exercised due care."

Instruction No. 18 was given to the jury in this language:

"You are instructed in this case that plaintiff is not required to show particularly what the specific act of negligence was, if any, which produced the accident which resulted in injuries to the plaintiff, but is only required to show that the accident was one that would ordinarily not have happened had due care been employed. The burden of proceeding then shifts to the defendants to show they exercised ordinary care."

Under the authorities considered above, it is mani-

fest in the first place that Instruction No. 17 was erroneous. It omitted the statement which we conceive to be clearly the law, that the thing which caused the injury must be shown to be under the *exclusive* control of the defendant. Counsel for plaintiff, it would seem themselves recognized the force of this requirement, inasmuch as already indicated, they pleaded in their petition that the hot water heater in question was "at all times during the time herein mentioned under the exclusive control and management of the defendant."

In the second place, we think, that neither of these two instructions should have been given. The doctrine of res ipsa loquitur is not in our judgment applicable to the facts of this case as disclosed by the record before us. Taking the three essentials of the rule as laid down by Mr. Wigmore, and which we regard as both sound and salutary, and through them scrutinizing the facts before us, we note that the heater in question, a standard equipment, was apparently one such that ordinarily no injurious operation was to be expected unless from "a careless construction, inspection or user," thus squaring with the first essential aforesaid.

With the second and third enumerated essentials, the facts of this record do not conform. As to the second one, it is evident that while the inspection of the heater was controlled by the defendant company, its user at the time of the injury was not. The plaintiff himself was using the heater then. He had gone down to the basement to light the gas, as he had done, so he says, quite a few times before; he was an employee who had worked around gas for many years, and was undoubtedly familiar with its properties. He opened the door of the heater; he turned off the gas and returned shortly thereafter and attempted to turn it on again and light it, and the explosion happened. This was certainly use on his part of the device in question

at the time of the injury quite as obviously as was a person's sitting down on a chair, pushing a swing door or pressing an electric switch. Webster's New International Dictionary (2d Ed.) defines the verb "use" as "to make use of; to avail one's self of; to employ." As to the heater, this the plaintiff undoubtedly did.

Concerning the third essential in the application of the doctrine res ipsa loquitur, it is evident the explosion of the gas did not happen under the proofs in this case "irrespective of any voluntary action at the time by" the plaintiff. He had shut off the gas and opened the door of the heater. As we have seen, there was testimony by several witnesses that this action in these respects cut off the draft in the heater and chimney and put the apparatus in such shape as to allow thirty cubic feet of a gas, which was heavier than air, to come back down the chimney and vent, out of the open door of the heater into the room and gather around the device, awaiting the scratched match of the plaintiff. If the unlighted gas flowing into the heater created an "emergency" within the terms of the warning notice, with which plaintiff was beyond question familiar, he did something in using the apparatus he was not directed thereby to do,—he opened the door of the heater and left it open. And he notified no one of the situation.

It may be observed additionally, that as suggested by the Massachusetts court in Wilson v. Colonial Air Transport, supra, that the doctrine of res ipsa loquitur should not be applied "if there is any reasonable or probable cause from which it might be inferred there was no negligence at all." The testimony referred to in the preceding paragraph was such as to authorize the jury to find that there was no negligence on defendants' part.

The theory of the rule under consideration keeps in mind the practical notion as applied to human affairs

that when the defendant has the exclusive management and control of the agency which inflicts the injury, the plaintiff is usually in no position to prove the particular circumstances which made such agency act as it ordinarily should not, while the defendant can and should produce evidence in explanation. Consequently, if the circumstances do not show or suggest that defendant should have that superior knowledge, or if the plaintiff himself possesses equal or superior means of explaining the occurrence, the rule may not properly be invoked. 45 C. J. 1205. In the case at bar, plaintiff himself was manipulating the operative controls of the heater, i. e., the gas shut-off valve and the heater door. He quite as much as any one else could, under the evidence in this case, supply an explanation of the accident.

No reference seems to have been made by any of the parties to this litigation to the case of Acme Cement Plaster Co. v. Westman, 20 Wyo. 143, 122 Pac. 89, wherein the application of the rule of res ipsa loquitur is somewhat discussed. We think that the trend of authority since that opinion was written has altered the principles apparently approved in that case and we now say that so far as the statements there made are at variance with what is announced herein it is to that extent modified.

For the prejudicial errors above discussed our conclusion is that the judgment of the district court of Converse County must be reversed with instructions to grant a new trial.

*Reversed.*

KIMBALL, Chief Justice.

I concur in the result announced in the foregoing opinion, but wish to state my reasons for believing that the case was submitted to the jury on an erroneous theory by instructions 17 and 18 which purport to apply the principle of res ipsa loquitur.

I think I may say that the members of the court agree that (as explained in Sweeny v. Irving, 228 U. S. 233) the principle permits, but does not compel, a finding of negligence. In applying the principle to the facts of a particular case, the court simply holds or declares that the fact-finding body may infer negligence from the proved circumstances, if that inference is more reasonable than an inference of due care. In jurisdictions where this view is entertained, there would seem to be no substantial reason for distinguishing cases in which the principle of res ipsa loquitur might be applied from other cases where negligence may be inferred from circumstantial evidence.

The essentials of the principle of res ipsa loquitur are thoroughly discussed in the foregoing opinion. We hold the principle inapplicable to this case in which there is evidence, including the testimony of the plaintiff himself, tending to show that the apparatus that permitted the gas to escape into the basement was not in the exclusive control of the defendant. We hold, also, that the evidence was sufficient to take the case to the jury on the questions of defendant's negligence and plaintiff's contributory negligence.

No doubt there are many cases in which the principle of res ipsa loquitur has been resorted to, though the injured party was handling or using the thing through or from which his injury was received. In some of those cases it could have been held as a matter of law that the plaintiff did nothing to cause the accident or to contribute to it. In others, in which the verdict acquitted the plaintiff of the suspicion or charge of contributing toward his injury, the decision, as it seems to me, might have been put on the ground that the same result would have been reached if the case had been handled as an action for negligence proved by circumstantial evidence.

If there be cases that sanction the application of the

principle of res ipsa loquitur when the evidence is sufficient to raise the question of plaintiff's contributory negligence in using or controlling the thing that caused his injury, I doubt their correctness. It is frequently said that the conditions, that the apparatus must have been at the time of the injury in the control of the party charged and that the injurious occurrence must have happened irrespective of any voluntary action at the time of the party injured, are imposed for the very purpose of excluding from the operation of this principle those cases in which there is a possibility that the plaintiff contributed to the injury. See Mathews v. Chicago & N. W. Ry. Co., 162 Minn. 313, 202 N. W. 896; Jump v. Ensign-Bickford Co., 117 Conn. 110, 122, 167 Atl. 90.

I do not doubt that there are cases in which the court cannot say as a matter of law that the cause of the injurious occurrence was, or that it was not, in the control of the defendant at the time of the injury, and the issue of fact on that point would have to be decided by the jury. If it be contended that this is such a case, there still would be no justification for instructions 17 and 18.

These instructions are quoted in full in the foregoing opinion, and need not be copied again. Instruction 17 defines the rule of res ipsa loquitur, recognizing the condition that "the thing which causes injury" must be "under the management and control of the defendant." Instruction 18 then tells the jury that the plaintiff "is only required to show that the accident was one that would ordinarily not have happened had due care been employed," and that the "burden of proceeding then shifts to the defendants to show they exercised ordinary care." Thus, while instruction 17, in declaring the abstract principle, recognizes the condition of control by defendant, instruction 18, in stating what the plaintiff was required to prove to "shift the burden

of proceeding," says nothing about control by defendant, and probably was understood by the jury as a declaration that under the law and the evidence, there was no issue on the question of plaintiff's control of the thing which caused the injury. This notwithstanding there was evidence to support the defendant's contention that plaintiff himself, in his use and control of the heater, permitted the gas to escape into the basement. Instruction 18 was evidently copied from Brunig v. Pacific Gas & Elec. Co., 140 Calif. App. 254, 35 P. (2d) 226, where it was approved, but it will be noted that in that case there was no room for the contention that any one except the defendant was using or in control of the pipes from which the gas escaped.

RINER, J., concurs.

Separate opinion of BLUME, Justice, concurring and dissenting in part.

It has been stated that the principle of res ipsa loquitur only applies to cases where on proof of the occurrence and injury, the existence of negligent default is the more reasonable probability. 8 A. L. R. 501. And it has been held that the doctrine is limited and restricted in scope, is ordinarily to be applied sparingly and with caution in peculiar and exceptional cases, and only where the facts and demands of justice make the application essential. 45 C. J. 1200. Hence it is often difficult to determine when the doctrine may be invoked, and it is not surprising that courts or the members thereof are not always in agreement. However, I am not prepared to hold that a person injured by an apparatus, which he used in the ordinary way with care and for the purpose for which it was intended, cannot, in any case, have the benefit of the rule, on the theory that such use leaves the defendant without exclusive control of user and that the person injured voluntarily interfered, as stated among the conditions

of the application of the rule in Wigmore on Evidence, Sec. 2905. The conditions stated in that work do not, I think, operate to exclude the rule in this case. The jury were authorized to find that plaintiff used due care. I do not think that any injurious consequences were ordinarily to be expected from the operation of the heater in question. It was under the exclusive control of the defendant, who undertook to furnish hot water with it—in other words, to have it in use. It was, then, in control of the user of it. If we may accept the implied finding of the jury, as I think we may, that plaintiff was not a trespasser, but was entitled to do what he did, and that he used due care, then he was but a temporary instrumentality of the defendant, to make such user effective. In such case the action of plaintiff should not be held to be a voluntary action on the part of the plaintiff in the sense of Professor Wigmore's third condition of the rule, but was an action impliedly permitted or asked by the defendant. The following cases, to a more or less extent, I think, sustain this view. Merino v. Borax Co., 124 Cal. App. 326, 12 P. (2d) 458; Hilson v. Pacific Gas & El. Co., 131 Cal. App. 427, 21 P. (2d) 662; Bergen v. Tulare Power Co., 173 Cal. 709, 161 Pac. 269; Killian v. Logan, 115 Conn. 437, 162 Atl. 30; Jump v. Ensign-Bickford Co., 117 Conn. 110, 167 Atl. 90. And see Van Horn v. Refining & Roofing Co., 27 Cal. App. 105, 148 Pac. 951. It would seem that cases which disclose that an apparatus, undertaken by defendant to be in use, and which is used in the ordinary way and for the purpose for which it is intended, by one impliedly authorized to do so, who has not assumed the risk of such use, and who uses it with due and proper care, cannot be controlled by the ordinary cases which speak of exclusive control and for that reason refuse to apply the rule under discussion. It would seem that it cannot properly be said in such case that there is a divided

responsibility. The mere fact that a person so uses the apparatus in no way shows that he is in better position than, or in as good a position as, the owner of the apparatus to explain the accident. With the change of a few of the terms, the following language in Class v. Y. W. C. Ass'n., 47 Ohio App. 128, 191 N. E. 102, seems appropriate:

"It seems evident that although the plaintiff opened the elevator door, and was in physical charge of same, he cannot be legally deemed in possession or control of the instrumentality. The act of plaintiff in opening the elevator door did not place him in possession and control of the instrumentality. He had a right to depend upon the normal operation" etc.

Courts hold, as stated in the opinion of Mr. Justice Riner, that the rule does not apply where the facts are such that an inference to the effect that the accident was due to a cause other than defendant's negligence can be drawn as reasonably as that it was due to his negligence. 45 C. J. 1213. I think the rule is sound. But that does not, I think, dispose of the question before us, but we must further determine whether that is a matter of law for the court or whether it is a question for the jury. If it is for the latter,—and I think that it is, except in a clear case—no reason exists why an instruction on res ipsa loquitur should not be given. The majority opinion holds, as I view it, that the court is authorized to take the rule out of the case as a matter of law, whenever the evidence is such that the jury is authorized to find that the defendant was not negligent. The question, or one very similar, was elaborately discussed by the writer in Worth v. Worth, 48 Wyo. 441, 39 P. (2d) 441, 103 A. L. R. 107, except that in that case we dealt with a presumption of law, while, according to the better opinion, as I think, the rule of res ipsa loquitur raises but an inference, and does not compel, but only permits, a judgment in the

absence of explanation. Sweeny v. Irving, 228 U. S. 233, 33 S. Ct. 416; Glowacki v. Ry. & Power Co., 116 Ohio St. 451, 157 N. E. 21; 45 C. J. 1223. See 1 University of Chicago L. R. 523. Still the same question above mentioned remains with us in such case as when we are dealing with a presumption of law. Some cases take the view that the point is one of law for the court. See as to this the view of the Connecticut court in 3 Conn. L. J. 25. Other courts take the opposite view. Cases pro and con are cited in the Worth case, and in the note to that case in 103 A. L. R. 126. See also Harper, Law of Torts, Sec. 77; Carpenter, 1 Univ. Chicago, L. R. 531. Glowacki v. Ry. & Power Co., supra, takes the view that it is a question for the jury, and that an instruction on the maxim of res ipsa loquitur is proper. My present view leads me to agree with that case, although I am aware that the point is not without difficulty. See also Briglio v. Holt, 85 Wash, 155, 147 Pac. 877; 45 C. J. 1363; LeJuene v. Petroleum Corp. (Cal. App.) 13 P. (2d) 1057; Connor v. Ry. Co., 189 Cal. 1, 207 Pac. 378.

The record reasonably suggests but two factors which could be said to bring the case at bar within any relation to the rule mentioned in 45 C. J. 1213 (see Van Horn v. Refining & Roofing Co., supra), namely, first, the testimony that the explosion was due, in its ultimate analysis, to the heaviness of the air at the time. The jury were not bound to accept this view. If they did not—and I think it was for them to say—the situation, so far as the rule of res ipsa loquitur is concerned, would be the same as though no such testimony were in the case. The second factor would be the acts of the plaintiff. If there had been no testimony as to plaintiff's use of proper care, then it might, perhaps, have been said, in accordance with the rule stated in 45 C. J. 1213, that the accident was due to the want of plaintiff's care as likely as to the negligence of defend-

ant. But the testimony changed the situation. Madden v. S. S. Co., 86 Cal. 445, 25 Pac. 5; Atlantic etc. Bottling Co. v. Danneman, 25 Ga. App. 43, 102 S. E. 542; Payne v. Bottling Co., 10 Ga. App. 762, 73 S. E. 1087. If plaintiff's want of negligence had been unquestioned, the rule of res ipsa loquitur should, I think, have been applied. The fact that there was conflict in the testimony on that point should not, as a matter of law, deprive him of the benefit of the rule. The dispute was one, I think, for the jury to determine. It had the right to believe his testimony, placing that point in the same position as though the use of proper care on plaintiff's part were unquestioned. In Madden v. S. S. Co., 86 Cal. 445, 25 Pac. 5, it appears that while plaintiff's decedent was employed in loading defendant's ship, the sling to the apparatus, provided for loading the ship, broke, precipitating freight onto deceased. The rule of res ipsa loquitur was held not applicable in the absence of showing that it was properly used, but the court said that "it may be conceded that" it would have been applicable "if it had been shown that the sling was properly used by the co-employees of the deceased, and in the ordinary way." And the court further said: "When it is said in some of the cases that the occurrence of an accident is prima facie evidence of insufficiency of the machinery or appliance being used; it must be confined to cases, if the rule is conceded to be a correct one, where the machinery or appliance is shown to have been used in the usual and proper way, at least where the same is being used by the party injured or his co-employees. This was not shown in this case, and therefore the rule contended for does not apply here." In Payne v. Bottling Company, supra, mentioned in note to 8 A. L. R. 502, and apparently cited with approval in Stolle v. Anheuser-Busch, 307 Mo. 520, 271 S. W. 497, 39 A. L. R. 1001, the court among other things said:

"If a manufacturer should sell to a jobber a gun, and after passing through the hands successively of the wholesaler and retailer, it finally reaches the marksman, and explodes in his hands while being used in the ordinary and usual manner, and injury results, it is plain that there was a defect in the gun. Somebody ought to be responsible. Concede that inferentially it could be said that the marksman must have done something to the weapon to cause it to explode, if he disproves this, and the retailer, the wholesaler, and the jobber all in turn show that they kept and handled the gun in the usual way, and did nothing to change its condition, the inference of negligence would be shifted back upon the manufacturer, who put the weapon of destruction in circulation with his endorsement that, when used in the ordinary and usual manner, no harm would come to him who used it. In such case it would be no answer, when the maxim that the thing spoke for itself is invoked, to say that, when the injury resulted, the thing was not in the possession, power or control of the manufacturer."

The instructions on the rule in this case have been discussed by counsel, as I view it, only from the standpoint as to whether or not the rule is applicable at all, and not from the standpoint as to the technical accuracy thereof, if the rule is applicable. Hence I express no opinion thereon except to say that the instructions should be in accordance with the view that the rule raises but an inference as stated in Sweeny v. Irving, supra (and see First Nat. Bank v. Ford, 30 Wyo. 110, 216 Pac. 691), and that it is better that the jury be told that the control of the defendant should be exclusive in order that the rule may apply. I regret, accordingly, that I cannot agree with the majority on the rule under discussion. On the other points I agree.