[S. F. No. 13289.   In Bank.—April 29, 1930.]

FRANK B. BARBIERI, Respondent, v. HERBERT E. LAW, Appellant.

Barry J. Colding, Theodore Hale and Carroll B. Crawford for Appellant.

Alvin Gerlack, Wayne R. Millington and Bronson, Bronson & Slaven for Respondent.

PRESTON, J.—The judgment rendered in favor of plaintiff in this action for damages for personal injuries alleged to have been received by him while using a sidewalk elevator or hoist is hereby affirmed.

For about two years prior to the accident it had been the custom of plaintiff, a twenty-eight year old Italian, knowing little English, in the employ of a scavenger company, to make regular calls at the Monadnock building, which extends from Market to Stevenson Street in San Francisco, for the purpose of collecting refuse from the basement thereof. The building, which was owned by ap-

pellant, had no rear entrance except through a sidewalk elevator, or hoist, which dropped some eight feet from sidewalk level to floor of basement. It was customary for the building night watchman to leave unlocked for plaintiff the sidewalk doors giving access to said elevator. Plaintiff would then open them, pull a chain from the sidewalk to raise the elevator, descend on it with sack or blanket in which to carry the rubbish, load it, ascend with it to the sidewalk and then place it on the scavenger truck. At times, however, the watchman had neglected to unlock said sidewalk doors, which unlatched only from underneath.

The morning of the accident, which occurred on February 3, 1926, at about 5 o'clock A. M., was one of these occasions. Plaintiff called as usual, but found the two iron sidewalk doors locked. He therefore went around the corner to the front entrance of the building and rang for the night watchman, who answered and took him down into the basement by one of the building's front passenger elevators. Said watchman, remaining in the front elevator, then directed plaintiff to go to the rear of the basement and take the sidewalk elevator himself.

Plaintiff testified that said elevator had been stopped so that its floor was about a foot and a half above the level of the basement floor. The basement was dimly lighted. He stepped up on the elevator and, raising on his toes, reached up to unlatch the sidewalk doors, steadying himself by placing his right hand on the side of the elevator shaft. While he was in that position (evidently because he was inadvertently pressing upon the operating lever) the elevator started up and he was crushed between the floor thereof and said sidewalk doors. A policeman and several pressmen on duty in the vicinity heard him scream, rushed up the street, forced open the iron doors, extricated him and aided in rushing him to the hospital.

He sustained a profound nervous shock, numerous bruises, a severe fracture of the left femur or thigh bone of the left leg, with severe laceration of the muscles and tendons thereof, together with internal injuries to his head, shoulders, chest and body, a twisting of the knee and ankle joints of both legs and left pelvis and wrenching of ligaments of the lower spine. He was first confined to the hospital for about eleven weeks and later for a period of about twenty-

three weeks. The injury to his leg, it was testified, would cause him some degree of permanent disability.

Said hoist was the usual hydraulic type of sidewalk elevator, operated by a starting lever or control chain with two rings. Pursuant to safety orders of the Industrial Accident Commission, it had been equipped with an iron rod safety device, which, when in place, prevented its operation while the sidewalk doors were closed. The engineer of the Monadnock building, a witness for plaintiff, testified that at the time he made his customary daily inspection, late in the afternoon preceding the accident, the safety device was intact and working properly. An elevator inspector for the Industrial Accident Commission, however, testified that said engineer told him after the accident that shortly prior thereto he had taken the device off to make repairs and had not replaced it. This statement, in turn, was discredited by other witnesses, who testified that the engineer had referred to the removal of a bumper or stop and not to the safety device. Other testimony showed that the device was found, after the accident, lying near the elevator. Whatever the facts of the matter may be, certain it is that the device was not on the elevator and in working order at the time plaintiff stepped on it, for, if it had been, the elevator would not have ascended until after the sidewalk doors had been opened.

In this state of the case the court refused to direct a verdict for defendant; the jury, upon the conflicting evidence, brought in a verdict for $11,000 for plaintiff and judgment in his favor followed. No claim is or under the evidence could be made that the amount awarded was excessive, but upon other grounds hereinafter set forth, defendant has prosecuted this appeal. In our opinion the matters urged by him all involve questions properly submitted to the jury, upon which their action is conclusive.

First, appellant urges, the verdict is not justified by the evidence, in that he claims that the testimony of his own witnesses and the witnesses for plaintiff alike established his freedom from any degree of negligence whatsoever. In this respect, he states he owed respondent only the duty to exercise ordinary care for his safety, which care was fully accorded him. This is unquestionable and in fact it is conceded by respondent that the degree of care

which appellant was required to exercise with relation to the maintenance of said elevator and respondent's use thereof in the manner stated, was no more than reasonable and ordinary care to assure his safety (*Blanco* v. *Marian Realty Co.*, 204 Cal. 145 [266 Pac. 798]). But here can it be said that substantial evidence was lacking to warrant the jury in concluding that appellant failed to exercise such reasonable or ordinary care? We think not. Respondent, instead of finding the doors unlocked and ready for him to open from the sidewalk above, was forced at 5 o'clock on the winter morning in question to descend to a dimly lighted basement and take over the elevator from which, without warning or knowledge on his part, the very device which would have assured his safety was missing. If such evidence was not sufficient to justify the action of the jury, we know of none that would.

■ The criticism directed against the wording of the complaint is not well founded, as negligence is therein sufficiently alleged in general terms (*McKeon* v. *Lissner*, 193 Cal. 297, 309 [223 Pac. 965], and cases therein cited; *Champagne* v. *Hamburger & Sons*, 169 Cal. 683 [147 Pac. 954]; 19 Cal. Jur., sec. 96, p. 671), ■ but we do agree with appellant that this is not a case where the facts warrant application of the doctrine of *res ipsa loquitur* for the instrumentality which caused the injury was at the time within respondent's power to operate (see 19 Cal. Jur., p. 708, sec. 125 et seq., and many cases cited in note). In fact, respondent admits that as a matter of law he is in no position to rely upon the claim that the elevator ascended automatically, in an unexplained manner, when he stepped upon it, in the face of the proof that the starting mechanism and all the other mechanical parts thereof, aside from said safety device and bumpers, were in good repair and working perfectly at said time. He further admits that, far from being unexplained, the obvious and reasonable explanation of said accident is that in endeavoring to steady himself in reaching up toward the doors, he must have unconsciously and involuntarily pressed upon the starting lever and, because said safety device was not in place, the platform ascended, thus causing his injuries in the manner aforesaid. ■ In other words, there was a substantial conflict in the evidence bearing upon the question of ap-

pellant's negligence and this conflict the jury were entitled to and did resolve in respondent's favor. From the above it follows that there was no error on the part of the court below in refusing to direct a verdict for appellant.

Appellant, however, further contends that the absence of the safety device was a mere mechanical condition, without causal power, and therefore it could not have been the proximate or efficient cause of respondent's injuries. In other words, although the evidence shows that the very purpose of said safety device was to prevent an accident of this character and in removing it or in allowing respondent to take the elevator when it was not in working order, appellant should have foreseen the possible consequences of such conduct, yet he urges that there was an intervening affirmative act on the part of respondent, to wit, pressing upon the starting lever, and such intervening act was the proximate cause of the injury. Intervening impulsive acts, however, do not necessarily break a chain of causation (*Champagne* v. *Hamburger & Sons, supra*), and, under the evidence, we cannot say that said alleged intervening act on the part of respondent was so disconnected in time and nature as to make it plain that the injury was in no way a natural or probable consequence of appellant's original wrongful act of omission, thus constituting the proximate cause by displacing the original cause of the accident. Upon this issue we also consider the implied finding of the jury binding. (See *Merrill* v. *Los Angeles etc. Co.*, 158 Cal. 499 [139 Am. St. Rep. 134, 31 L. R. A. (N. S.) 559, 111 Pac. 534].)

Lastly, appellant contends, respondent was as a matter of law guilty of contributory negligence, for he claims that, as no proof of actionable negligence on his part was produced and respondent could not invoke the doctrine of *res ipsa loquitur*, it therefore follows that respondent's injuries, if negligently incurred, were the result of his own negligence proximately causing or contributing thereto; that is, respondent's act in consciously or unconsciously depressing said control lever before he unlatched the doors, appellant claims, constituted contributory negligence as a matter of law. The answer to this contention is, first, that proof was offered of actionable negligence on the part of appellant, as above set forth, and, second, the circumstances

of the accident presented a question for the jury as to respondent's contributory negligence, if any. Full and ample instructions were furnished them bearing upon this issue and it is evident that they believed that respondent did not knowingly or intentionally apply the power to start said elevator. In other words, if respondent's said act did contribute to his injury, it was not by his own fault that it so contributed, which latter element is essential to render the plea available. (19 Cal. Jur., p. 647, sec. 76.)

The resolution by the jury of the numerous issues presented in respondent's favor is, in our opinion, abundantly supported by the record. This fact, and the views above set forth, compel an affirmance of the judgment rendered by the court below, as first hereinabove ordered.

Curtis, J., Shenk, J., Richards, J., Seawell, J., and Waste, C. J., concurred.

Rehearing denied.