[Civ. No. 17075. Second Dist., Div. Two. Feb. 20, 1950.]

ANTONIA WUKALOFF et al., Respondents, v. MALIBOU LAKE MOUNTAIN CLUB, LTD. (a Corporation), Appellant.

Eugene S. Ives for Appellant.

Melvin Simon and A. J. O'Connor for Respondents.

WILSON, J.—Defendant has appealed from a judgment entered upon a verdict in favor of plaintiffs as damages for

personal injuries received by plaintiff Antonia Wukaloff upon defendant's premises.

On or about January 10, 1947, plaintiffs and defendant, through the chairman of the latter's house committee, entered into an oral agreement whereby plaintiffs were to operate the dining room and attend to the rental of club rooms to members. The terms of the oral agreement were reduced to writing by the chairman of the house committee. The parties agree that the memorandum, though not signed, embodied the terms of the oral agreement with one exception, to wit, that the officers of the club determined the price of meals and room rental, and service could not be given to any persons other than club members and their guests. It reads as follows:

"1—Mr. & Mrs. Wukoloff to take charge of all food, beverage and lodgings at Malibou Lake Mt. Club with no lease.

2—Mr. & Mrs. Wukoloff to pay club—
    a—5% on all gross of food and beverage sales
    b—20% on all room rentals
    c—To pay for all gas used in the kitchen
    d—To serve dinners from 1.50, 2.00 and up. & ala carte. Childrens portion at half price.
    e—To keep all parts of the club house and club rooms clean within the four walls.
    f—To pay all expenses for operation of this business including help and materials used in cleaning

3—Malibou Lake Mt. Club will
    a—Keep all electric equipment, plumbing, painting, and decorating in good condition.
    b—Furnish electricity and oil for heating club house and rooms.
    d—Keep outside of club house in good condition.
    e—Buy all stock on hand at termination of business arrangement."

The clubhouse is a u-shaped building, the public rooms and kitchen occupying that portion extending easterly and westerly. The guest rooms are in two wings known as the west wing and the east wing, extending in a northerly direction. The guest rooms in both wings open into what are referred to in the evidence as corridors. The "corridors" are in fact balconies open on the side opposite the rooms. There is a handrail along the outside edge of each balcony. The balcony or corridor serving the rooms on the west wing is level for its entire distance, while that on the east has at about the middle

of the wing two steps down as one proceeds northerly. The floor of the corridor or balcony and the steps are painted a maroon or dark red color, there being no stripes on the steps or other indication of the change of level.

Plaintiffs were permitted the use of one room in the building. After occupying a room in the west wing for a few days they moved to one in the east wing. The accident took place about two days after the plaintiffs had moved. The room occupied by them is immediately at the head of the stairway leading from the main building up to the balcony. Prior to the accident Mrs. Wukaloff had never walked along the balcony farther than the door to the room occupied by her and her husband and had no knowledge of the existence of the steps. The club through its manager had charge of the lighting of the corridors. The switch for the lights was located in a private card room on the door to which was a sign reading "Private." The door was kept locked practically all the time, the key being in the possession of the manager. Plaintiffs were never provided with a key and in the manager's absence were unable to reach the switch in order to turn on the lights in the corridors. On the evening in question the manager departed from the clubhouse without turning on the lights. At about 8 o'clock in the evening the telephone bell rang in the clubroom on the lower floor adjoining the kitchen where Mrs. Wukaloff was working. Answering the call she was advised that the manager of the club was wanted. Not knowing he was absent she went up the steps leading to the south end of the east balcony and inquired of Mr. Novikoff, the head waiter, whose room adjoined that of plaintiffs, where the manager's room was located. He told her the manager occupied the room at the extreme north end of the corridor. She proceeded in the darkness in that direction and upon reaching the steps fell to the lower level of the corridor and received serious injuries causing her to be confined in a hospital under medical care for several months. Her special damages were about $6,000.

In addition to the verdict for damages the jury answered two special interrogatories propounded by the court: (1) whether or not the relationship between plaintiffs and defendant was that of invitor and invitee, to which the jury answered "Yes"; (2) whether or not their relationship was that of landlord and tenant, to which the answer was "No."

Defendant contends that the relationship created by the agreement of the parties was that of landlord and tenant and

therefore defendant is not liable for the damages sustained by Mrs. Wukaloff. In support of this theory defendant cites *Beckett* v. *City of Paris Dry Goods Co.*, 14 Cal.2d 633 [96 P.2d 122]. The facts in that case are entirely different from those in the instant case. Dr. Beckett, an optometrist, occupied space in the defendant's department store where he conducted the optical department of the store. He installed his own equipment, fixtures and showcases. The contract was for a definite term and he was required to provide insurance indemnifying the defendant from liability arising through his negligence or that of his employees. The contract contained all the attributes of a lease. It provided that the plaintiff "cannot assign this lease," referred to "space demised" and provided for "monthly rental," all of which, as the court stated, are the terminology of a lease. The plaintiff fixed his own prices for the merchandise he sold and for his professional services. He sold to the public in general and was not limited to the service of the persons selected by the defendant. ■ In the instant case the memorandum prepared by defendant's representative provided that plaintiffs were to take charge of the food, beverage and lodgings at the club *"with no lease."* The club was operated for the benefit of its members and their guests. Plaintiffs had no election as to who should be permitted to occupy rooms or be served with meals. They were forbidden to rent rooms or to serve food to any person other than a member or his guest. The rent for the use of the guest rooms and the price of meals were fixed by defendant and the period of time during which any member should be permitted to occupy a room was determined by the club. Plaintiffs had nothing to do with the corridors. The agreement required them to keep clean the clubhouse and rooms "within the four walls." The corridors or balconies, open on the side opposite the guest rooms, were not within the four walls of the building. Defendant was to keep the outside of the clubhouse together with the electrical equipment, plumbing and painting in good condition and to furnish electricity and oil for heating the clubhouse and rooms.

From the foregoing evidence it is manifest that the relationship of landlord and tenant was not created by the contract between the parties. Plaintiffs were not lessees but were in the nature of concessionaires.

■ It was the duty of defendant to exercise ordinary care in keeping its premises in a reasonably safe condition. Defendant maintains that such duty is fulfilled by the facts, as testi-

fied by the Building Inspector of the County of Los Angeles and a construction engineer, that the plans for the building were examined and approved by the appropriate county officials, that the building complied with the State Housing Act [Health & Saf. Code, § 15000 et seq.], the County Building Code and with sound building practice in Los Angeles County, and that the change in the level of the floor of the corridor was made necessary by the natural contour of the ground on which the building was constructed. These facts did not relieve defendant of its obligation to provide a safe passage to persons using the corridor in reaching the northerly end of the building.

The fact that the floor and steps were painted a dark color with nothing to indicate in the darkness a change of level were matters to be considered by the jury in determining whether or not defendant was negligent in its maintenance of its premises. Some of defendant's witnesses testified there was ''practically'' always a light in the men's room but there is no evidence that the light was burning in that room at the time of Mrs. Wukaloff's accident. The men's room is on the ground floor with a window opening to the north. The evidence does not show whether the light globe in that room, when lighted, was dim or bright, how far its rays extended, or whether the glass in the window was clear, frosted or opaque. Photographs offered in evidence by defendant, taken at night, some containing legends indicating the lights in the rooms along the corridor were illuminated, others that the light in the men's room was burning, show a dense darkness on the floor of the corridor and do not indicate the presence of the steps. There is no evidence that the room lights were burning at the time of the accident. Photographs in evidence taken when the sun was shining show the steps and shadows of the handrail but they are obviously of no value in indicating conditions in the dark.

The owner of a building owes a duty to an invitee to exercise ordinary care and prudence in keeping the premises in a reasonably safe condition so as not to expose him unnecessarily to danger. (*Neel* v. *Mannings Inc.*, 19 Cal.2d 647, 652 [122 P.2d 576]; *Dobbie* v. *Pacific Gas & El. Co.*, 95 Cal.App. 781, 788 [273 P. 630].)

Defendant pleaded contributory negligence on Mrs. Wukaloff's part. For several days she had occupied a room on the west wing where the corridor is level for its entire length. She moved with her husband to the east wing only a

day or two prior to the accident. She had not had occasion to walk along the corridor in that wing and was without knowledge it was different from that on the west wing. Under the contract plaintiffs were not required to do any cleaning or other work outside the four walls; there was no occasion, as far as the evidence shows, for either of them to have been at any point north of their cwn room or to have observed the condition of the floor of the corridor. Defendant contends that since the handrail along the outer edge of the balcony extended downward where the steps are located Mrs. Wukaloff was negligent in failing to observe a change in level—that she should have grasped the handrail as she walked. This issue and all others raised by defendant were decided by the jury against its contentions and we find no reason for disturbing the verdict.

The facts in the cases cited by defendant on the issue of contributory negligence are so dissimilar from those in the instant case that they can furnish no consolation to defendant. In *Powers* v. *Raymond,* 197 Cal. 126 [239 P. 1069], the plaintiff was injured as a result of falling while walking late at night along a dark, unlighted path instead of using the main well-lighted roadway. In *Bruce* v. *Risley,* 15 Cal.App.2d 659 [59 P.2d 847], the plaintiff, after opening a door leading to a dark, narrow stair-landing with which he was unfamiliar, proceeded through the doorway by the light of small matches. In *Cornell* v. *Hearst Sunical etc. Co.,* 55 Cal.App.2d 708 [131 P.2d 404], a fisherman who had traversed a wharf in daytime on many occasions and was familiar with the structure and its approaches, fell into the water on a dark night while returning to his boat which was anchored nearby. In *Kammerer* v. *Gallagher,* 58 Ill.App. 561, the plaintiff went into a dark passageway between dilapidated houses without knowledge of the condition of the steps therein. Other cases cited by defendant are similarly inapplicable.

Mr. Miller, who had been manager of the club for several weeks before plaintiffs moved into the building and remained for some time thereafter, testified he had fallen in the darkness on three different occasions at the point where Mrs. Wukaloff fell. Since he was defendant's manager and representative on the premises his knowledge of the dangerous condition existing when the balcony lights were not burning is imputed to defendant.

Contrary to defendant's contention, Miller's evidence

was admissible for consideration by the jury as tending to show (1) the cause of Mrs. Wukaloff's injury, (2) notice to defendant of the unsafe condition of the corridor, (3) neglect on defendant's part in not correcting the defect (*Wills* v. *Price*, 26 Cal.App.2d 338, 344 [79 P.2d 406] and cases cited), and for the purpose of showing that defendant might reasonably have anticipated that persons walking along the corridor were likely to suffer similar accidents. (*McCormick* v. *Great Western Power Co.*, 214 Cal. 658, 664 [8 P.2d 145, 81 A.L.R. 678].) Miller's falls had not occurred so long before Mrs. Wukaloff's as to render evidence thereof inadmissible as being too remote.

Judgment affirmed.

Moore, P. J., and McComb, J., concurred.