## UNITED STATES v. TRUBOW.
### No. 13654.

United States Court of Appeals
Ninth Circuit.
June 21, 1954.

See, also, 9 Cir., 196 F.2d 161.

Holmes Baldridge, Asst. Atty. Gen., Paul A. Sweeney, Massillon M. Heuser, Morton Hollander, Attorneys, Department of Justice, Washington, D. C., Lloyd H. Burke, U. S. Atty., Frederick J. Woelflen, Asst. U. S. Atty., San Francisco, Cal., for appellant.

Ben K. Lerer, Charles O. Morgan, Jr., San Francisco, Cal., for appellee.

Before DENMAN, Chief Judge, and LEMMON and CHAMBERS, Circuit Judges.

LEMMON, Circuit Judge.

This appeal is from a judgment against the United States in an action for damages under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671 et seq.

Appellant owned and operated the Marine Hospital in San Francisco. Appellee with his helper went to the hospital for the purpose of picking up surplus refrigerators which had been purchased from appellant and which were held in the basement for the purchaser to take delivery there. Someone connected with the hospital and who appeared to be in charge of the storeroom informed appellee as to the location of the freight elevator. The helper with a refrigerator in a hand truck proceeded into the elevator first. The doors of the elevator are described as "bi-parting", meaning that there were two separate parts thereof. When opened, the upper half of the pair of doors would slide upward through the opening in the ceiling until the bottom of the upper half approached the ceiling; and the lower half would simultaneously slide downward through the opening in the floor, until the top of the lower half of the door was flush with the floor. When the pair of doors closed, the process was reversed until the two halves met midway. The doors were in the open position when appellee entered the elevator. A handle was affixed to the outside of the upper door. Normally a leather or canvas strap, ten or twelve inches in length, fastened to the inside of the upper door is used in closing the door from inside the elevator.

Appellee pulled down with full force upon the metal handles on the outside of the door while standing inside the elevator. This caused the bottom half to ascend and appellee's hand was caught between the two doors where the two doors met midway. This action was brought to recover for the injuries thus sustained.

It is conceded, as indeed it must, that appellee was a business invitee.

Appellant raises three questions on this appeal. They are considered in the order presented in its brief.

1. *Evidence Of Negligence Of The United States.*

It is urged that there was no evidence that the accident resulted from a negligent or wrongful act on the part of a government employee. Contending that liability under the Act does not include that of the landowner for the defective condition of his premises, which contention will be later considered, appellant argues there is no evidentiary basis for a finding that the United States knew, or through the exercise of ordinary care should have known, of any defective condition.

About two days after the accident an investigation by appellee and a photograph then taken revealed a dark leather strap on the inside of the upper door. The strap "was broken off". It was about a half-inch long and was "riveted

or bolted to the metal part of the door". Appellee did not see the strap on the day of the accident. It may be inferred that the strap was in the same condition on that day as it was on the day of the investigation. The court so found. We may not disturb that finding.

The obligation of the owner of premises to an invitee is stated in the leading California case on the subject, Shanley v. American Olive Co., 185 Cal. 552, 555, 197 P. 793, 794.

"A person so invited upon the premises of another may recover from such owner 'for any injuries received owing to the dangerous condition of the premises known' to the owner and not known to the person so invited; but such owner 'is not bound to keep his premises absolutely safe.' 29 Cyc. 453. The responsibility of such owner for the safety of such person in such a case is not absolute; he is only required to use ordinary care for the safety of the persons he invites to come upon the premises. If there is a danger attending upon such entry, or upon the work which the person invited is to do thereon, and such danger arises from causes or conditions not readily apparent to the eye, it is the duty of the owner to give such person reasonable notice or warning of such danger. But such owner is entitled to assume that such invitee will perceive that which would be obvious to him upon the ordinary use of his own senses. He is not required to give to the invitee notice or warning of an obvious danger."

The rule of ordinary care is applied to the operation and maintenance of elevators upon and in the owner's building. Blanco v. Marian Realty Co., 204 Cal. 145, 266 P. 798; Barbieri v. Law, 209 Cal. 429, 287 P. 464.

Viewing the evidence in the light most favorable to appellee we hold that there is found in the detailed circumstances substantial evidence warranting the trial judge to conclude that appellant failed to exercise such reasonable and ordinary care.

The inviter is not liable for an injury suffered by an invitee which resulted from a defective or dangerous condition not caused by the negligent act of the inviter, and of which the inviter had no knowledge, unless that condition existed for such a length of time that if the inviter had exercised ordinary care he would have discovered it and could and would have remedied it before the time of the injury. Girvetz v. Boys' Market, Inc., 91 Cal.App.2d 827, 206 P.2d 6. Whether, under all the circumstances, the defective condition had existed long enough to have been discovered and remedied by one exercising reasonable care is ordinarily for the trier of the fact. The length of time the condition must exist before the inviter may be charged with negligence varies according to the circumstances. Louie v. Hagstrom's Food Stores, 81 Cal.App.2d 601, 184 P.2d 708. It does not appear in the evidence how long before the accident the strap had been broken. The accident occurred at one or one-thirty o'clock in the afternoon. Kellogg, the assistant storekeeper, operated the elevator at least once a day. Other government employees used it. There was no proof that it had been operated that day by other than agents or employees of appellant. The judge could infer, as he did infer, that the strap had been broken by one of the employees. Appellant was at that moment charged with notice of the defect. Under California law these circumstances present for the jury the question of whether the condition causing the injury existed long enough to have been discoverable and remedied by the inviter. Hatfield v. Levy Brothers, 18 Cal.2d 798, 807, 117 P. 2d 841.

But aside from the question of negligence arising from a failure to repair the broken strap, the evidence otherwise showed a negligent condition of which appellant had notice. An owner has the duty of warning invitees of hidden or concealed perils of which he knows or should know in the exercise of reason-

able care [1] so that business visitors shall not be unnecessarily or unreasonably exposed to danger. Wukaloff v. Malibou Lake Mountain Club Ltd., 96 Cal.App.2d 147, 214 P.2d 832; 65 C.J.S., Negligence, § 45, page 526. Appellant was charged with knowledge that the elevator would be used in removing the refrigerators. Assuming that the strap was in place and that it was suitable for safely closing the doors, the evidence discloses that the elevator was unlighted and, although "there was enough reflection from the light of the corridor to see what you were doing in the elevator", appellee did not see the strap, indicating the lighting inside was inadequate and that one might observe the handle but not the strap. There was no warning that there were the two parts to the door and that by pulling down on either the strap or the handle the lower half would ascend so as to meet the upper half midway. Appellant was charged with knowledge of these conditions and of the dangers inherent thereto, and that parties unacquainted with the operation of the doors might use the elevator. Appellee had never before been in an elevator "where there were doors meeting in the middle". Neither the government employee in the basement or any one else said anything to him about the operation of the doors.

## 2. Contributory Negligence.

There is pressed upon us the argument that the evidence affirmatively establishes that appellee was contributorily negligent and that under California law this bars recovery, citing Markham v. Hancock Oil Co., 2 Cal.App.2d 392, 394, 37 P.2d 1087. However, the reasonableness of appellee's conduct was clearly a factual question. The finding against appellant on this issue is supported. There is no merit in the argument.

## 3. The Liability Of The Government As Landowner Under The Federal Tort Claims Act.

Appellant states that a defective condition created or maintained on land may subject the landowner to two types of liability. Under the first he, like any other employer, may be liable under the doctrine of *respondeat superior* for the negligence of his employee, and under the second a "special liability of a possessor of land". Restatement, Law of Torts, Section 343. Illustrating the distinction, appellant observes that a maintenance man employed by the owner to keep the premises in repair may fail in his duty, but the injured person would have no right of action against the maintenance man resulting in his failure to keep the premises in repair, citing Greco v. Levy, 257 App.Div. 209, 12 N.Y.S.2d 470, affirmed 282 N.Y. 575, 24 N.E.2d 989. It is further argued that the owner cannot be held vicariously liable under the *respondeat superior* doctrine since the employee is not individually liable to the injured person. It follows, so appellant claims, we have in the instant case the "special" type of landowner's liability and that the Act embraces the first type of liability only.

The pertinent statutory provision, 28 U.S.C. § 1346(b) reads:

"Subject to the provisions of chapter 171 of this title, the district courts * * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, * * * for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private

---

1. Dingman v. A. F. Mattock Company, 15 Cal.2d 622, 104 P.2d 26, holding that if the dangers are not obvious or known to the invitee the jury may find that the dangerous condition is known to the inviter. The ground of the liability is the proprietor's superior knowledge of the perilous instrumentality and the danger therefrom to persons invited upon the property. Mautino v. Sutter Hospital Ass'n, 211 Cal. 556, 561, 296 P. 76.

person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."[2]

The United States can act only through the agency of some human being. An omission to act when chargeable to the United States is an omission of its agent or agents. As said in Jackson v. United States, 3 Cir., 196 F.2d 725, 726:

> "The statute in so many words says, in imposing liability, 'personal injury * * * caused by the negligent or wrongful act or omission of any employee of the government * * *.' The maintenance of Post Office property in an unreasonably dangerous condition is just as much the negligent omission of an employee of the government as is the failure to heed a stop sign by the driver of a mail truck."

This question was before the court in United States v. Hull, 1 Cir., 195 F.2d 64. It was argued there, as here, that the Act exposed the United States to liability only where the employee himself is legally liable to the person injured. The court disposed of this contention by stating that to so hold there would have to be read into the statute as a condition to liability the words "and where the employee would also be liable to the claimant", an unwarranted interpolation, as there observed. We are in complete agreement with the careful and persuasive treatment of the subject there given. We agree with what was said in the Jackson case, supra, which refers to the Hull opinion: "It would be an affectation of learning on our part to reword what has been so carefully worked out in the opinion just cited."

Affirmed.

---

2. 28 U.S.C. § 2674, which is a portion of Chapter 171 incorporated by reference in Sec. 1346(b), provides that the "United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages."